OWEN E. ABRAHAM, Assignee for the Benefit of Creditors of CHARLES E. BALL and LOUIS E. WHICHER, Composing the Firm of BALL & WHICHER, Appellant, *v.* AMERICAN EXCHANGE NATIONAL BANK, Respondent.

First Department, April 30, 1920.

Trial — former decision sustaining complaint — when dismissal of complaint on new trial is error — additional evidence not entitling defendant to dismissal of complaint as matter of law — principal and agent — acceptance and deposit by principal of proceeds of fraudulent transaction by agent — estoppel and ratification — constructive trust — when declarations of depositor binding upon depositary.

Where it has been held by the Appellate Division that it was error for the trial court to dismiss a complaint, there being an issue for the jury, the decision is binding upon a new trial unless additional undisputed facts are shown which, as a matter of law, nullify the plaintiff's testimony. Hence, where there is no such additional evidence, it is error for the trial justice to dismiss the complaint on a new trial.

In an action based upon the fraud of an agent for which his alleged principals are answerable, and through them the defendant bank which was their depositary of the proceeds of the fraud, evidence examined and *held*, to present a question of fact for the jury and that, therefore, the dismissal of the complaint was error.

A principal who retains the proceeds of his agent's fraudulent acts after notice thereof is liable for the fraud of the agent, although he had no prior knowledge thereof.

Where money was deposited with the defendant bank and the depositor was thereafter apprised of an agent's fraud and of a claim upon the moneys deposited, it must be deemed to hold the same as a constructive trustee and where it mixes such funds with other funds in the same bank and draws a portion thereof, it is deemed to have drawn out its own funds in preference to the trust money.

The bank, receiving a check representing moneys obtained by fraud, of which the depositor is not a holder in due course but is merely a custodian of the proceeds, when sued for the trust moneys is bound by any declarations or admissions made by the depositor.

APPEAL by the plaintiff, Owen E. Abraham, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 28th day of December, 1917, dismissing the complaint upon the

merits at the close of the case, and also from an order entered
in said clerk's office on the 19th day of December, 1917,
denying plaintiff's motion for a new trial made upon the
minutes.

*Herman Aaron* of counsel [*Parker & Aaron*, attorneys],
for the appellant.

*Abram J. Rose* of counsel [*Michael H. Cardozo, Jr.*, with
him on the brief; *Cardozo & Nathan*, attorneys], for the
respondent.

GREENBAUM, J.:

This court upon the former appeal in this case held that
the dismissal of the complaint by the trial court was error,
for the reason that an issue of fact for the jury was presented
upon the proofs as to whether Valentine, through whose
alleged fraud the plaintiff's assignors parted with the check
for $24,906.25, was the agent of E. D. Shepard & Co., the
recipients of the check.   (See 179 App. Div. 918.)

The case on appeal discloses that substantially all the
proofs which were adduced upon the previous trial were
presented at the trial under review.   It thus necessarily
follows that unless additional undisputed facts were submitted
upon the latter trial, the effect of which as matter of law
would be to nullify the favorable testimony given on behalf
of the plaintiff, the learned trial justice erred in dismissing
the complaint and the judgment entered upon such dismissal
must be reversed.   We find no such additional evidence.

The learned counsel for the respondent in his brief calls
attention to two pieces of testimony which were not given
upon the first trial.   The first related to entries in the books
of Ball & Whicher, in which it is claimed that Valentine's
personal account was credited with the profit or commission
of $500 on July 28, 1908, being the difference between $25,000
Yankee Fuel bonds at par and interest amounting to $25,406.25,
the price at which Valentine told Ball & Whicher the bonds
were sold to Spingarn, and $24,906.25, the amount of the
check to E. D. Shepard & Co.

It is argued from this that the entries in the books of Ball &
Whicher indicate that the transaction was treated by them as

a personal one with Valentine on his own account and not as agent for E. D. Shepard & Co. Upon the argument of this appeal the learned counsel for the respondent admitted in open court that he withdrew the contention that he made upon his brief with respect to this item of $500. The reason for this is apparent from an examination of all the testimony on this subject. It appears that the learned counsel misapprehended the character of the entry. The $500 item referred to a check paid by Valentine to Ball & Whicher, and not one paid by them to him. It arose out of a speculative stock account of Valentine with Ball & Whicher concerning some New York Stock Exchange securities for which he was indebted to them and which he repaid on July twenty-eighth when he got his check for $2,406.25, thus crediting his account with the payment of $500.

The second additional piece of evidence to which the court's attention is directed refers to some testimony given by defendant's witness Lincoln, to the effect that it was an invariable rule or custom of Shepard & Co. to pay their salesmen a salary and commission of three per cent on the sale of their securities. But it is to be observed that Valentine was not a regular employee, and, therefore, stood on a different basis from those who received a fixed salary. The testimony was not of a conclusive character. It was for the jury to consider it for what they might deem it was worth.

In view of the fact that another trial must be had, we shall endeavor to outline the issues that are to be tried and the law applicable thereto. We will preface our observations by the statement that in the first action, which was brought by Ball & Whicher, the assignors of the plaintiff, against E. D. Shepard & Co., the Court of Appeals held in Ball v. Shepard (202 N. Y. 247) that the plaintiffs in that case could not recover upon the theory upon which that action was brought, which was, that Ball & Whicher had paid for the bonds under a mistake of fact. The ground upon which the court so held was that Shepard & Co. did not share in the mistake and received the money in good faith in the regular course of business and for a valuable consideration.

The theory of the present action is radically different from that just stated. The plaintiff here sues upon the fraud of

Valentine for which E. D. Shepard & Co. are answerable, and through them, the defendant bank which was their depositary of the proceeds of the fraud.

The proposition of law relied upon by plaintiff to sustain his contention in the present case is that the principal, without prior knowledge of the fraud of the agent, is nevertheless bound by his fraud, if after notice thereof he retains the proceeds of the agent's act. Such action on the part of the principal constitutes a ratification of the agent's fraud. (*Carr v. National Bank & Loan Co.*, 167 N. Y. 375; *Chisholm v. Eisenhuth*, 69 App. Div. 135; *Fitzhugh v. Sackett*, 50 N. Y. 699; *Green v. Des Garets*, 210 id. 79.)

In the last-mentioned case the rule is well stated as follows: " ' It is an established principle of law that where a person acts for another who accepts the fruits of his efforts, the latter must be deemed to have adopted the methods employed, and he may not, even though innocent, receive the benefits and at the same time disclaim responsibility for the fraud by means of which they arose.' "

The law upon which defendant's liability may be predicated is clear. The facts undisputedly are that the check to E. D. Shepard & Co. was deposited to their credit with the defendant bank; that Ball & Whicher notified defendant of their claim on July 28, 1908; that at all times between July 28 and August 6, 1908, the account of E. D. Shepard & Co. with the defendant showed that it had a credit balance of $24,906.25 and that as a matter of fact throughout that period it was upwards of $50,000.

Upon being apprised of Valentine's fraud, E. D. Shepard & Co. must be deemed to have held the proceeds of the check as constructive trustees for the latter. The rule under such circumstances is well stated in *Importers & Traders' Nat. Bank v. Peters* (123 N. Y. 278): " When money held by a person in a fiduciary capacity has been paid or deposited by him in his general account at a bank, the party for whom the money is held can follow it and has a charge on the balance in the banker's hands, and if a person holding money in a fiduciary capacity, pays it to his account at his banker's, and mixes it with his own money and afterwards draws out some by checks generally and in the ordinary manner, the drawer of

the checks must be taken to have drawn out his own in preference to the trust money."

The defendant bank under the circumstances detailed was not a holder in due course. (*Citizens' State Bank* v. *Cowles*, 180 N. Y. 349.) Indeed it was merely the custodian of the proceeds.

Under such circumstances, any declarations or admissions of E. D. Shepard & Co. binding upon them would be binding upon the defendant bank. (*Von Sachs* v. *Kretz*, 72 N. Y. 548, and cases therein cited.)

The learned trial court was of the opinion that the evidence of agency was insufficient. We shall, therefore, indicate a few of the important portions of the testimony in the record, which bear upon the question of Valentine's alleged agency. In the first place it appears to be practically undisputed that when Valentine left the employ of E. D. Shepard & Co. to become an employee of Ball & Whicher, it was understood by both the latter and E. D. Shepard & Co. that Valentine was at liberty to continue selling bonds on his own account for E. D. Shepard & Co. Indeed, it was expressly admitted by Mr. Lincoln, the defendant's principal witness, who had complete charge of the management of the business of E. D. Shepard & Co., that Valentine's employment with Ball & Whicher, a Stock Exchange concern, would be agreeable to them because Shepard & Co. was not a Stock Exchange house.

We thus have evidence that at the outset of Valentine's relations with Ball & Whicher it was understood by all the parties concerned that Valentine might act as the agent of E. D. Shepard & Co. in respect of particular sales of their bonds. The books of E. D. Shepard & Co. in evidence show that thereafter Valentine made a number of sales of bonds for them to third parties, notably to one Parsons and one Woolworth. This testimony was elicited from the defendant's own witnesses. In each of these cases it was shown that the bonds were delivered directly by E. D. Shepard & Co. to the purchasers, Parsons and Woolworth, respectively, and the books of account of the sellers showed that they were paid for by checks drawn by the purchasers to the order of E. D. Shepard & Co., who took and kept them and immediately

thereafter paid a compensation or commission thereon to Valentine.

Coming now to the transaction directly involved in this case, the evidence is that on the morning of July 28, 1908, Valentine obtained a quotation of $25,000 Yankee Fuel bonds at ninety flat, which meant that Valentine would be entitled to receive as his compensation any moneys in excess of ninety which he might obtain on the sale of these bonds. E. D. Shepard & Co. claim that this was a sale to Valentine and that the excess above ninety was not to be treated as a commission. The books of Shepard & Co., however, show that the bonds were billed to Ball & Whicher and not to Valentine, although Ball & Whicher were not the purchasers, the ostensible purchaser being one Spingarn. It may be assumed that E. D. Shepard & Co. then knew nothing of Spingarn. The same thing is true of Ball & Whicher, who knew nothing about him until Valentine came to them and stated that Spingarn was the purchaser, and it was upon that false representation that Ball & Whicher cleared the transaction.

The books of account of Shepard & Co. contain entries with respect to this transaction indicating the payment to Valentine of the excess over ninety, amounting to $2,406.25 as " commission " paid to him. The stub of their check book as well as their cash, journal and ledger entries show that that sum was paid as commissions. The ledger entries are made in an account known as " Salesmen's Commission Account."

It is true that the defendant's witness Lincoln attempted to prove that these entries were made inadvertently. In this connection attention should be called to his cross-examination on this point as follows: " Q. Do you know what a salesman's commission means?  A. Yes.  Q. What does that mean? A. The amount of money he receives over what we receive. Q. That he receives as a commission on the sale?  A. Yes, it would be rather an elastic term, commission.  Q. It is his compensation, isn't it, it is the compensation that the salesman gets for the transaction, isn't it?  A. Yes, it might be."

The entries as they stand are admissions on the part of

E. D. Shepard & Co. that the sum of $2,406.25 was paid to Valentine as a commission. The jury might consider the question that if Valentine was the purchaser, why did not the books of E. D. Shepard & Co. show that he purchased the bonds?

Sufficient has been shown to demonstrate beyond a doubt that the case presented a question of fact for the jury and that the dismissal of the complaint was error.

The judgment and order appealed from should be reversed and a new trial ordered, with costs to appellant to abide the event.

DOWLING, LAUGHLIN, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to appellant to abide the event.