## SAVINGS BANK OF KEWANEE, ILLINOIS v. JOHN SCHAAL.[1]

October 5, 1923.

No. 23,569.

**Verdict not reversed on ground that evidence before jury was incredible.**

1. This court cannot hold that the evidence, to the effect that the signature of defendant to the promissory note in suit was obtained by the trickery, fraud and wrongful conduct of the payee charged in the answer, is so improbable or incredible that the jury was not justified in returning a verdict which so finds.

**Charge too favorable to plaintiff.**

2. The instruction complained of was more favorable to plaintiff than it could demand, since the defense of no consideration was thereby practically eliminated.

**Evidence insufficient to prove plaintiff purchased note in good faith.**

3. Plaintiff is not in a position to claim the rights of a good faith purchaser, for value, in due course, and before maturity, for the evidence shows that the purchase price of the note in suit was placed to the credit of the payee, the seller of the note, and fails to show that such credit was exhausted before notice of the defense.

**No new trial because of admission of irrelevant answer of witness.**

4. The admission, over objection, of an answer relating to an irrelevant matter having no bearing upon the issues tried, does not justify the granting of a new trial.

**Counsel not criticised.**

5. There was no misconduct of counsel of the prevailing party that calls for just criticism.

Action in the district court for Martin county to recover $6,000 upon a promissory note. The case was tried before Nelson, J., who at the close of testimony denied defendant's motion for a directed

[1]Reported in 195 N. W. 141.

verdict, and a jury which returned a verdict in favor of defendant. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Paul C. Cooper,* for appellant.

*Haycraft & McCune* and *Frundt & Morse,* for respondent.

HOLT, J.

The appeal is from an order denying a new trial, after verdict for defendant, in an action upon a promissory note.

Plaintiff, a bank at Kewanee, Illinois, claimed to be a purchaser in good faith, for value and before maturity, of a $6,000 promissory note purporting to be made by defendant, dated October 9, 1920, payable to the order of Murray Bros. & Ward Land Company on or before March 1, 1921, indorsed and payment guaranteed by the payee who also waived notice of dishonor and protest. The answer denied execution and delivery, and averred that, if any instrument in the form alleged had been obtained from defendant, it was so obtained by trickery and fraud of the payee, causing and inducing defendant to partake of intoxicating and drugged liquor whereby he was so deprived of his reason and will power that he did not know that he was signing a promissory note. The note was also alleged to be without consideration.

Earnestly and vigorously the contention is made that the verdict is not justified by the evidence. From the manner in which the issues were submitted, it must be taken as true that the jury found the note to have been obtained from defendant by trickery, fraud and the imposition alleged in the answer.

It appears that defendant came here from Germany when he was 26 years old; that he has always been a farmer; that he speaks the English language with some difficulty, and cannot read it at all; and that he had sold his farm in Faribault county some time previous to the fall of 1920, and had taken back a mortgage for $33,000 and one for $12,000. Some real estate agents had thereafter sought to interest him in the purchase of other farms in the vicinity of Fairmont, his then home, and he had been taken around to see several. On October 8, 1920, one Dick Peters, an agent for the Murray

Bros. & Ward Land Company, went with defendant and another agent to look at a farm near the Twin Cities, but it did not suit. Peters on that trip took defendant to the office of the land company referred to, in Minneapolis. He was persuaded to go with Peters and Ed Murray, one of the company, to Fargo, and look at some farms the company owned or was interested in in that locality.

Defendant's testimony is in substance that he was not intending to buy farms, but went along because it did not cost him anything; that the party drove out in automobiles, called attention to some farms, but spent part of the time in hunting; that they made a brief stop at one farm, but he made no particular examination of the land or buildings; that, when they returned to Fargo in the evening, he was given a drink which made him sick and dizzy so that he had no control over his mental faculties; that he knew he was asked to sign some instrument relating to land; that he recalled signing his name, but was not in condition to refuse; that he could not read and that he was not informed that any paper he signed was a promissory note, and did not suspect that he had signed such an instrument until a copy of a contract fell out of his pocket, when on the sleeper returning from Fargo to Minneapolis; that he asked the porter, who picked up the paper, to read it to him and that the recital therein was the first he knew of a promissory note, or that he had agreed to purchase a farm; that he at once demanded of Peters, who was on the sleeper, a return of the note; that on arriving in Minneapolis one of the Murrays was called on the telephone and met Peters and defendant at the company's office, when defendant again demanded a return of the note and the cancelation of the contract, which was refused; that he returned to his home ill, where he remained in that condition for two or three weeks; that thereupon he and his wife went to Minneapolis and again demanded from the land company the return and cancelation of the instruments it had obtained from him.

Peters denies defendant's story as to fraud. Admits that defendant was furnished a drink, but claims that he asked for it and that the others also drank from the same bottle without being affected. None of the members or officers of the land company testified. To

some extent both defendant and Peters are corroborated as to particulars wherein they contradict each other, but not on the main issue as to whether the drink furnished defendant made him practically non compos, of which condition the officer and the agent took advantage in obtaining the note and contract.

It must be conceded that defendant's story borders in several respects on the incredible. But at the same time it is also difficult to believe that a farmer from southern Minnesota, on his first visit to a distant, unknown locality, should, upon a most cursory examination, conclude to buy a 480-acre farm for the price of $67,000, for more than one-half of which sum he was to go in debt. The $33,000 mortgage he owned was to be assigned as part payment. There is no evidence that he consulted anyone at Fargo or near the farm as to the value of lands there, or even that he made any particular investigation as to the condition of the farm or the buildings thereon. The ordinary German farmer is not apt to engage in a transaction of this magnitude without first consulting his wife and family. The jury had also the right to consider whether one in defendant's circumstances, lacking information as to values and without more investigation, would be likely to make a transaction of this nature if in his right senses.

The deal was somewhat peculiar. The note in suit was not intended as evidencing a payment of part of the purchase price of the farm. It was intended as liquidated damages in case defendant did not on March 1, 1921, consummate the purchase of the farm by assigning the $33,000 note and mortgage referred to and executing a note and mortgage of $34,000 for the balance of the purchase price. The contract also contains the provision that the neglect or refusal of defendant to consummate the purchase shall entitle the seller to specific performance and the right to enforce this $6,000 note as liquidated damages. Hence, if defendant did not complete the purchase as agreed, he might be compelled to complete it by the payment of $73,000, instead of the agreed price of $67,000. Taking the whole record we are unable to hold that the verdict, to the effect that, by the trickery and fraud of the payee charged in the answer, defendant signed the note not knowing it to be promissory note, is

not without adequate support, approved, as it is, by the learned trial court.

The court's instruction on the issue of no consideration is as favorable to plaintiff as could be asked for. It virtually eliminated that defense unless trickery and fraud were proven, and charged that, if it was taken in good faith as security for the performance of the contract, there was a valid consideration.

Plaintiff is not in position to stress the claim of being a good-faith purchaser. Murray Bros. & Ward Land Company, for years, had discounted promissory notes with plaintiff. In respect to this transaction plaintiff's cashier testified that early in November, 1920, this note with two others, of $5,000 each, were mailed to plaintiff by Murray Bros. & Ward Land Company, and the amount thereof was placed to their credit, "which amount they checked out in due course." But nowhere does it appear when it was checked out. More than the amount so credited to the account of the payee may have remained in plaintiff's hands when it received notice of the defense the maker had. Union Nat. Bank v. Winsor, 101 Minn. 470, 112 N. W. 999, 118 Am. St. 641, 11 Ann. Cas. 204; First Nat. Bank of Phillips v. Denfield, 143 Minn. 281, 173 N. W. 661.

There perhaps was no justification for bringing out that defendant had taken back the farm he had sold in Faribault county because the purchaser was unable to pay for it, but such an incident is so frequent a result of land booms that it is common knowledge with jurors and the admission of this irrelevant testimony, having no bearing on the issues tried, cannot be deemed a sufficient cause for a new trial.

The claim of misconduct of counsel is without merit. The note with the guarantee of the payee was in evidence, so was the testimony of plaintiff that the note had been bought without inquiry as to the responsibility of the maker, and that the guarantor was considered good, still this action was brought against the maker alone, when the payee guarantor could also have been made a party. The facts alluded to justified comment. Plaintiff had had some prior litigations upon notes purchased of this same land company, in which the makers had defended on grounds similar to those here set up.

Plaintiff's cashier, on cross-examination, seemed to have forgotten at least one of these actions, and defendant's counsel was attempting to jog his memory by putting a question which recited certain supposed facts in connection with the suit. The objection was made that the question assumed facts not in evidence. It was ruled out, but no suggestion was then made that the mere asking of the question was misconduct of counsel meriting even a reprimand from the court.

We fail to discover any error or misconduct which would justify this court in disturbing the verdict.

Order affirmed.