## Real Estate-Land Title & Trust Co. *v.* Butler et al., Appellants.

Argued January 22, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Robert T. McCracken*, with him *C. Russell Phillips*, for appellants.—There is no evidence that the bank paid out on the faith of the check in suit: National Bank v. Bonsor, 38 Pa. Superior Ct. 275; Mutual Trust Co. v. Parrish, 276 Pa. 422; Parrish v. Trust Co., 282 Pa. 152; Lightfoot v. Bunnel, 76 Pa. Superior Ct. 468; Wesleyville Bank v. Rose, 85 Pa. Superior Ct. 52.

Defenses against the true owner of the check are immaterial since that owner is not a party.

*Boyd Lee Spahr,* of *Ballard, Spahr, Andrews & Ingersoll,* with him *Charles I. Thompson,* for appellee.—The court properly left to the jury the question as to whether appellee honored Lamson's checks relying on appellants' check: Douglass v. Mitchell, 35 Pa. 440; Phila. City Pass. Ry. v. Henrice, 92 Pa. 431; Juniata B. & L. Assn. v. Hetzel, 103 Pa. 507.

The rule is laid down in National Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275; Parrish v. Trust Co., 282 Pa. 152.

Where the maker of a note payable at a bank has at the date of maturity a general deposit to his credit sufficient to discharge the note, the bank is bound to charge the note against the deposit: Commercial Nat. Bank v. Henninger, 105 Pa. 496; German Nat. Bank v. Foreman, 138 Pa. 474; Mechanics Bank v. Seitz, 150 Pa. 632.

Of course if the after-deposited check was greater than the indebtedness due by the depositor up to the moment of the deposit, the bank would acquire a lien on the deposited check only for the amount necessary to liquidate the antecedent indebtness, but where, as here, such indebtedness was in excess of the deposited check, it acquired title to the entire check: Mutual Trust Co. v. Parrish, 276 Pa. 422.

Appellee was entitled to recover even though its position was merely that of agent for collection for the depositor: Mut. Trust Co. v. Huhn, 269 Pa. 348; Mut. Trust Co. v. Parrish, 276 Pa. 422.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, March 18,1929:

The Real Estate-Land Title & Trust Company sued to recover the amount of a check issued by defendants to one Lamson, a depositor in plaintiff bank, which claimed to be a holder for value. Defendants alleged that plain-

tiff did not hold the check for value, but was merely an agent for collection; and, for present purposes, this issue may be taken as the controlling one in the case. Defendants have appealed from judgment entered on a verdict for plaintiff. ·

On the morning of November 20, 1925, Lamson had a balance to his credit of approximately $77,000 in a checking account with plaintiff bank; also a balance, estimated to be about $20,000 (though it subsequently proved to be materially less); in a collateral loan account with plaintiff. About noon on the day in question, Lamson deposited in the first of the above mentioned accounts the check now in suit, for $20,502, so that he then had an apparent credit of $117,502. On that day checks totaling $117,000, previously drawn by Lamson, were paid by plaintiff bank. Defendants stopped payment on their check, and, as a consequence, Lamson's account was overdrawn to a greater amount than represented by this last mentioned item of deposit therein.

The checks totaling $117,000 came into plaintiff bank through the clearing-house in two batches, one at 8:30 on the morning of November 30, 1925, and the other at 11 a. m. on that day, both prior to the deposit of the check in suit; but plaintiff contends the jurors were warranted in their finding that, though the checks which exhausted Lamson's account were presented to plaintiff bank before the deposit of defendants' check, yet none of the Lamson checks were honored until 2 p. m. on the day in question, and that they were then honored in the belief that his credit balance, made up in part by the amount of defendants' check, warranted their payment.

Defendants offered in evidence a rule printed by plaintiff bank in Lamson's pass book, and in such books generally, providing that checks deposited with it were received "only for collection." Of course, this notice could not be construed as more than a contract between plaintiff bank and its depositor Lamson; the rule was

58

in no sense made for the benefit of one in the position of the present defendants, and they cannot profit by it. Moreover, plaintiff offered evidence (which was received and is not assigned as error) of the common practice of banks in Philadelphia, including the appellee, to permit customers to draw upon noncollected checks deposited in their accounts.

Defendants tendered no evidence to show that the Lamson checks presented to plaintiff bank on November 20, 1925, were paid before the deposit of the check in suit; in this regard, defendants rested their case on the bare facts, already recited, that Lamson's checks, totaling $117,000, came into plaintiff bank prior to the deposit in Lamson's account of their own check, and from these bare facts they sought to have the conclusion drawn that payment by plaintiff of Lamson's checks could in no sense have been on faith engendered by the deposit of their check in the latter's account.

On the other hand, plaintiff called one of its officials to testify that, on the day under investigation, all of Lamson's checks were in fact honored on the strength of the balance then standing to his credit in the bank, including, as an item of deposit, the check for $20,502. This witness said specifically that, under the rule of the clearing-house (which rule is not disputed), his bank had until 2 o'clock on the day in question to honor or dishonor the checks which had come in during the forenoon; and, upon being asked, "When, in fact, did you honor or dishonor those checks?" (meaning the Lamson checks), he answered, "Two o'clock." On cross-examination, this witness said that there was no record to show the precise hour when the Lamson checks were honored on the particular day under discussion, but he explained that "they would be automatically honored by not returning" them as dishonored, and that this occurred at 2 o'clock, not before. The witness further said the Lamson checks were paid because the bank officials, on the faith of the deposits in the latter's account,

thought "all these checks were good" and that there was a $20,000 balance in his collateral loan account; though, as previously stated, subsequent events in point of fact, proved that they had over-estimated this last mentioned balance. He still further said, while he could not state with certainty that, before honoring the Lamson checks on November 20, 1925, each check deposited in the latter's account was scrutinized by plaintiff bank, yet, when accounts were being closely drawn upon, as was the condition of the Lamson account on that day, it was the "common practice" to make an examination of the bigger items of deposit, and he was warranted in assuming that such a course had been followed in the present instance. This, considering the fact that the witness was talking about matters which occurred some two and a half years before the trial, was probably about as far as anyone could have gone in giving information as to what had happened in the particular matter under inquiry.

Bank of Phœnixville v. Bonsor, 38 Pa. Superior Ct. 275, 279, 280, is a case where a check, deposited in that bank, had payment stopped on it; this caused the depositor's account to be overdrawn, and the bank, claiming to be a holder for value, brought suit against the maker of the check. Judgment on a verdict for defendant was reversed, and Judge PORTER, now president judge, writing for the Superior Court, in the course of his opinion, correctly said, two significant things applicable to the present controversy: (1) that "The plaintiff made out a prima facie case by the presentation of the check [in suit] with its endorsement and the certificate of protest for nonpayment"; (2) "When plaintiff bank ......paid the checks of its depositor.......it is fair to presume that this extension of credit was based upon the state of [the depositor's] account, which included the very check......in question,......[hence] plaintiff bank clearly had a lien upon [that] check for the amount thus advanced": see also Lightfoot v. Bunnel, 76 Pa. Su-

perior Ct. 468, 472-3. Both of the above cited Superior Court cases followed the principle indicated by this court in First Nat. Bank v. Gregg, 79 Pa. 384, 386. Applying to the present case the principles underlying these judicial utterances, it is fair to assume that if the check for $20,502 had not been deposited in Lamson's account at noon on November 20, 1925, plaintiff,—which had until two o'clock on that day to honor or to refuse to honor checks coming to it through the clearing-house,—would not have paid its depositor's checks as it did. We have, however, more to go upon than this fair assumption; as already pointed out, there was specific evidence for the jury as to the method pursued by plaintiff bank in paying checks coming to it in batches from other banks, or from the clearing-house, and as to the hour of the day, on November 20, 1925, when Lamson's checks were in fact honored. Then, again, it was for defendants to show that plaintiff was a mere agent for collection, and not in fact a holder for value, of the check in suit (see Parrish v. Mutual Trust Company, 282 Pa. 152, 156); of this they lacked specific proof, and the finding on the general proofs was against them. The court below did not, however, stand on legal presumptions, or on rules as to the burden of proof; under correct and careful instruction on the law, it submitted to the triers of the facts all the evidence in the case and the inferences to be drawn therefrom. The jury was particularly told: "The question for you to determine is......as to whether or not the plaintiff honored any or all of the checks [drawn on Lamson's account, that is, any of the amount totaling $117,707.90], upon the faith and credit of the defendants' check in the amount of $20,502......In that connection you have to consider and determine from the evidence which you have heard, [particularly] as to the time when that check was deposited, whether or not plaintiff extended credit on the faith thereof, that is, whether the checks which were cashed for Lamson were [cashed] after that check had been received......If you

find that the plaintiff bank did so, then your verdict should be for plaintiff; if, on the other hand, you find that it did not give credit or make advances upon the faith of defendants' check, then your verdict should be for the defendants." The jury found for plaintiff, and judgment was properly entered on the verdict.

The judgment is affirmed.