No. 518-659

First Circuit

---

## FIRST NAT'L BANK OF SHREVEPORT v. CAPITAL CITY PETROLEUM PRODUCTS CO., INC.

---

(December 3, 1929. Opinion and Decree.)
(March 5, 1930. Rehearing Granted Restricted to the Right to Remand Case for Further Evidence.)
(June 9, 1930. Opinion and Decree on Rehearing.)

---

Taylor, Porter, Loret & Brooks, of Baton Rouge, attorneys for plaintiff, appellee.

C. A. Battle, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. On September 11, 1928, the Brown-Mason Oil Company drew a draft or trade acceptance on the defendant, the Capital City Petroleum Products, Incorporated, payable 90 days after date. Embodied in the draft is the following line in print:

"The obligation of the acceptor of this bill arises out of the purchase of goods from the drawer."

Across the face of the draft, dated September 11, 1928, appears the following:

"We accept this draft without qualifying conditions to be paid at maturity. Payable at Louisiana National Bank. Location of Bank, Baton Rouge, La.; Capital City Petroleum Products Company, Inc. By B. R. Carney, President."

The Brown-Mason Oil, drawer of the draft, went into the hands of a receiver before its maturity. The draft was for the purchase of oil from the Brown-Mason Oil Company, as it is indicated by the line which is printed in the instrument, above reproduced. The oil was never delivered to the defendant company, purchaser of the oil, and the drawee.

This suit is brought against defendant, drawee, for $1,062.55, face value of the draft, with legal interest, by plaintiff bank, alleging itself to be the holder and owner thereof, in due course, for a valuable consideration, and before maturity. The defense of the Capital City Petroleum Company is that plaintiff is not holder and owner of the draft in due course. Judgment was rendered in favor of plaintiff for the amount claimed, from which defendant prosecutes this appeal.

Section 28, Act No. 64, of 1904, says that failure of consideration is a matter of defense against any person not a holder in due course. As the oil was never delivered, there was between the Brown-Mason Oil Company, vendor, and defendant, vendee, a total absence or failure of consideration, which, under the section of the statute referred to, is a legal defense, "against any person not a holder in due course." As against the defendant company, the title of the Brown-Mason Oil Company to the draft was defective, as there was no consideration for it.

To constitute notice of an infirmity or defect in the title of the person negotiating the instrument, section 56 of said act says:

"The person to whom it is negotiated must have had actual knowledge of the infirmity or defect."

The evidence does not show that plaintiff bank knew that the oil had not been delivered to defendant company, or had any knowledge of the defect or infirmity in the draft. It also appears that the instrument was complete and regular on its face, and had come into the hands of plaintiff bank before its maturity. There is nothing also to indicate that plaintiff did not come in possession of the draft in good faith. There is, however, another essential requirement under section 52 of said act to constitute a holder in due course, and that is, he must be a holder for value.

In this case, as it appears that the title of the Brown-Mason Oil Company, which negotiated the instrument, was defective under section 59 of said act, the burden was on plaintiff to show that it had acquired title to the instrument for value, as that is one of the sacramental and indispensable requisites to constitute the acquisition as one in due course.

The vital question here is therefore as to whether or not plaintiff acquired the draft in question, for value? If so acquired, there was a transmission or transfer of title to plaintiff from the Brown-Mason Oil Company, otherwise there was not, and plaintiff was not a holder or owner in due course as alleged in its petition.

F. A. Brown, vice-president of the Brown-Mason Oil Company at the time plaintiff came into possession of the draft, says he conducted the negotiations with the bank in reference to the instrument, that the amount of the draft was placed by the bank to the credit of the Brown-Mason Oil Company which he represented, and that he got value for it.

W. L. Young, vice-president of the bank, and R. B. McPherson, assistant vice-president, both testify to the same effect, and say that the draft was discounted at 8 per cent on September 12, 1928, and that on the same day credit was given to the Brown-Mason Oil Company which had been one of its regular customers for a period of seven or eight years. It would seem from the foregoing statement of these witnesses that the bank had actually acquired title to the draft.

The record shows, as before stated, that the bank had had considerable business dealings with the Brown-Mason Oil Company. In testifying about the business relations between the bank and the Oil Company, McPherson, assistant vice-president of the bank, said it was the "habit" of the bank to charge the account of the oil company with the trade acceptances similar to the one in question, when they were returned, unpaid. The testimony of Young, vice-president of the bank, is to the same effect, though not so clearly stated. This reservation which gave the bank the privilege of charging the oil company with the drafts that were returned unpaid shows that it did not make, nor intend to effect, an outright purchase thereof when it gave credit therefor to the oil company. The amounts so credited to the oil company, its depositor, constituted a checking account. If it were shown that the oil company had drawn against the amount so credited on the trade acceptance under discussion, or to an amount which had included that item, the bank would have acquired title, and would have been invested with the ownership of the draft, notwithstanding the reservation to which we have referred.

It was so held by a majority of this court on rehearing in the case of Holmes & Barnes vs. Shawnee Milling Company, 5 La.

App. 392, wherein a large number of authorities were reviewed. In that case the writer of this opinion dissented because of certain restrictions which the bank had placed on the handling of the draft contested therein, but recognized the principle that the bank could have acquired the ownership of the draft by parting with its money to the amount or in excess of the draft.

In the instant case there is no proof whatsoever to show that any draft for any amount was drawn by the Brown-Mason Oil Company on the bank, after the credit had been placed on its books. It is therefore plain that the only consideration on the part of the bank was to place the credit on its books in favor of the oil company with the right reserved to charge the amount back to the oil company, if the draft was not paid. This simple process did not and could not transmit ownership.

The record shows that the oil company had been a customer of the bank for several years, and was in debt to it for a sum exceeding $30,000. Hence there was here a pre-existing debt in favor of the bank. This pre-existing debt constituted value, and could have formed a consideration if the bank had applied the amount of the draft thereto. Act No. 64 of 1904, sec. 25. There was no contract between the parties to that effect, and no proof or claim by the bank that the credit given for the draft had been so applied. To the contrary, the proof shows that the draft in contest, like all similar drafts, in case it was returned unpaid, was to be charged back to the oil company. Such a reservation precludes the idea that the draft was applied to the pre-existing debt; and the fact is that there is no proof to that effect.

In passing on this issue of title, we do so with due consideration to the words incorporated in the draft that the obligation of the acceptor of the bill arose out of the purchase of oil, and to the acceptance by defendant company on the face of the draft, which says, without disqualifying conditions to be paid at maturity. Whatever may be the legal effect of such stipulations, it cannot do away with the necessity of showing that plaintiff bank acquired the draft for value. This proof was absolutely necessary to establish ownership in the plaintiff, without which it is not a holder in due course, and its rights are therefore subject to all the equities between the drawer and the drawee of the instrument which show that there was no consideration for the draft, a defense which defendant, the drawee, had a right, under section 28 of said act, to urge against plaintiff not a holder in due course. This defense should have been upheld; plaintiff having no right to recover.

It is therefore ordered and decreed that the judgment appealed from be, and is hereby, avoided and reversed; and that the demand of the plaintiff be rejected at its cost in both courts.

## ON REHEARING

ELLIOTT, J. A rehearing was granted in this case for the purpose of determining whether the case should be remanded and re-opened for further evidence. We have decided that it must be done. The evidence does not make it clear what became of the proceeds of the draft and acceptance sued on.

It should be clearly shown whether Brown-Mason Oil Company, Inc., drew out of the bank all or part of said proceeds. And if all or part was drawn out, the date,

amount and means, that is, whether by check, draft or other method it was done. And each withdrawal should appear, duly verified by a copy of the instrument by which it was done. A sworn statement of the account of Brown-Mason Oil Company, Inc., with the plaintiff bank, commencing at the time the bank opened, on the morning of the day the acceptance was deposited, showing the state of its account, showing said deposit and all other deposits made that day and for three days thereafter, together with each withdrawal and the state of the account at the end of said time should be produced.

We also desire information in addition to that first contemplated, as follows: We wish to know whether the term, "We accept this draft without qualifying conditions to be paid at maturity," was a requirement of the bank or of Brown-Mason Oil Company, Inc., and whether the form in question is that generally used in the business of the bank or in that of Brown-Mason Oil Company, Inc., or was such form used only in certain cases, and if only in certain cases, explain in what cases.

· Was it the bank or Brown-Mason Oil Company, Inc., that caused this form to be printed, and on whose stationery is it printed?

To the end that the further evidence above mentioned may be obtained and placed in the record for the lower court and this court, the judgment appealed from, as well as our former opinion and decree herein, are now annulled and set aside, and the case is remanded to the lower court for a new trial. The cost to abide the final determination of the suit.