**FIRST NAT. BANK v. CROSS & NAPPER.***
No. 4844.

Court of Appeal of Louisiana.
Second Circuit.
Dec. 5, 1934.

W. E. McBride and A. K. Goff, Jr., both of Ruston, for appellant.

Elder & Elder, of Ruston, for appellee.

DREW, Judge.

On August 30, 1933, Cross & Napper, defendant herein, drafted on Anderson Clayton & Co., of Monroe, La., for the sum of $771.92. The payee in the draft was the Bank of Simsboro. Attached to the draft was a bill of lading or statement giving the numbers and weights of each of sixteen bales of cotton. The draft was deposited in the Bank of Simsboro on that date, and the account of Cross & Napper credited with the amount of the draft, less 77 cents, which was deducted as charges for collecting the draft. The amount of $771.15 was entered in the bank book of defendant, and a deposit slip also issued to it for said amount. On the front leaf of the bank book the following notation is printed:

"Always bring this book with your deposits.

"See that entries agree with your tickets.

"In receiving items for deposit or collection, this bank acts only as depositors' collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This bank or its correspondents may send items, directly or indirectly, to any bank, including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited."

This same notice is printed at the top of the deposit slip.

The Bank of Simsboro was dealing with the First National Bank of Ruston, plaintiff herein, as one of its correspondents, and had from time to time prior to this transaction secured money from that bank. On the morning the draft in question was given, the Bank of

---

*Rehearing denied January 9, 1935.

Simsboro had secured from the First National Bank of Ruston the sum of $800 in currency, with the understanding and agreement that it would deliver to it some cotton drafts, and on the afternoon of that day the vice president and chairman of the Simsboro Bank went in person and delivered to the First National Bank of Ruston the draft in question. The following slip was attached to the draft by the Bank of Simsboro when it was delivered to the First National Bank of Ruston:

"Bank of Simsboro

"Simsboro, La., August 30, 1933.
"First National Bank, Ruston, La.
"N. P. 84–235:

"We enclose for credit ———.

"Please report by date of letter.

"Do not hold for convenience of parties, but protest and return at once unless otherwise instructed.

"Do not deliver Bill of Lading until payment of Draft.

"Protest Items marked X.

"Wire non-payment of items of $500.00 and over.

"Respectfully,

"C. W. Tatum,
"V. P. and Cashier.

| Drawn On | Amount |
|---|---|
| Anderson Clayton | $771.92 |
| | $771.92" |

The First National Bank issued to the Bank of Simsboro a credit letter showing receipt of the said draft, and credited the account of the Bank of Simsboro with the amount called for by said draft. At noon, the day following, the bank examiner closed the Bank of Simsboro, and it has never opened since that time. Cross & Napper, the makers of the draft, immediately notified Anderson Clayton & Co. not to pay it, and the draft was not paid. Cross & Napper executed another draft on Anderson Clayton & Co. for the same amount, but, before it was paid, the First National Bank of Ruston informed Anderson Clayton & Co. that it was claiming the proceeds under the first draft; therefore Anderson Clayton & Co. refused to pay the second draft.

When the draft was delivered to the First National Bank of Ruston by the Bank of Simsboro, it bore the following indorsement:

"Pay to the order of any Bank, banker or trust company. All prior endorsements guaranteed.

"Bank of Simsboro,
"C. W. Tatum, V. P., and Cashier."

The First National Bank of Ruston instituted this suit against Cross & Napper, makers of the draft, alleging it was the owner in due course of said draft, that it acquired it for value, and that its indorser, Bank of Simsboro, had acquired the draft for value from Cross & Napper.

The defense set up is that the draft was deposited with the Simsboro Bank for collection, that ownership did not pass to the Bank of Simsboro, and that plaintiff did not acquire said draft in due course, but received it for collection as a corresponding bank of the Bank of Simsboro. Before any evidence was introduced on trial of the case below, defendant objected to the introduction of any evidence for the reason that plaintiff's petition did not set forth a cause or right of action.

The testimony was admitted subject to the objection, and, after trial was had, the lower court rendered a written opinion awarding judgment to plaintiff as prayed for, and holding that the Bank of Simsboro had acquired the draft for value and was the owner of same. Defendant has appealed from that judgment, and urges in this court the objection urged in the lower court to the introduction of any testimony. In support of this contention, defendant relies exclusively upon the case of Citizens' Trust Company v. Ward, 195 Mo. App. 223, 190 S. W. 364, which case cites the cases of Bank of Indian Territory v. First Nat. Bank, 109 Mo. App. 665, 83 S. W. 537, and National Bank of Rolla v. First Nat. Bank of Salem, 141 Mo. App. 719, 125 S. W. 513, wherein the court said, following the defendant's reasoning, it must be admitted that the indorsement on the note "pay to any bank or banker" is an indorsement for collection, and that an indorsement for collection does not transfer title.

This identical question was before the court in the case of Interstate Trust Company et al. v. United States National Bank, and decided by the Supreme Court of Colorado, reported in 67 Colo. 6, 185 P. 260, 261, 10 A. L. R. 705. In that case the court said:

"It is urged by plaintiffs in error that the endorsements: 'Pay to the order of any bank or banker—previous endorsements guaranteed,' made by The Interstate Trust Company, and 'Received payment through the

Denver Clearing House,' by The First National Bank, were collection, or restrictive endorsements, and that the endorsers guaranteed nothing as to the genuineness or worth of the paper. A restrictive endorsement is such only when it prohibits further negotiation of the paper, constitutes the endorser merely the agent of the owner, or vests the title in the endorsee in trust for, or to the use of, some other person. Section 4499, R. S. 1908. The authorities are practically unanimous that endorsements such as the ones under consideration can have no such limited or restricted effect. Crawford on Negotiable Instruments (1916 Ed.) 78, 79, 130, 132; National Bank v. Bossemeyer, 101 Neb. 96, 162 N. W. 503, L. R. A. 1917E, 374; First Nat. Bank v. First Nat. Bank, 58 Ohio St. 207, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. Rep. 748; First Nat. Bank v. First Nat. Bank, 4 Ind. App. 355, 30 N. E. 808, 51 Am. St. Rep. 221; Woods v. Colony Bank, 114 Ga. 683, 40 S. E. 720, 56 L. R. A. 929; N. Y. Produce Ex. Bank v. Twelfth Ward Bank, 135 App. Div. 52, 119 N. Y. S. 988.

"In National Bank v. Bossemeyer [101 Neb. 100, L. R. A. 1917E, 374, 162 N. W. 503], supra, the court in discussing the effect of the endorsement: 'Pay to any bank or banker; all previous endorsements guaranteed,' said:

" 'Is the indorsement restrictive? Whatever may have been held before the enactment of the Negotiable Instruments Act, it is clear that the question must be determined by the provisions of that statute, * * * as follows: "An indorsement is restrictive which either: First—prohibits the further negotiation of the instrument; or, second—constitutes the indorsee the agent of the indorser; or, third—vests the title in the indorsee in trust for or to the use of some other person. But the mere absence of words implying power to negotiate does not make an indorsement restrictive."

" 'There is nothing on the face of this indorsement which prohibits the further negotiation of the instrument or constitutes the indorsee the agent of the indorser; or vests title in the indorsee in trust for the use of some other person, and hence, by the most elementary principles of statutory construction, the plain meaning of the language must be observed, and it must be held that the indorsement was not restrictive.' "

In the footnotes of this case, it will be seen that a number of states hold to the view urged by defendant and hold such an indorsement to be a restricted indorsement and cannot transfer title.

The reasoning in the case above quoted meets with our approval, and we find the indorsement was not restrictive and was sufficient to transfer title. The objection to the testimony was therefore properly overruled.

The first defense raised is that the Bank of Simsboro did not become the owner of the draft when deposited. It is clear from the oral testimony, as well as the printed notice on the deposit slip and in the bank book of defendant, that the Bank of Simsboro reserved to itself the right to charge back to defendant the amount of the draft, in case it was returned unpaid. It is also clear that no restrictions were placed on the credit given defendant by the Bank of Simsboro. There is nothing in the record to show that defendant could not have checked out the entire amount; in fact, it did give checks against its account on that date, but the total amount of the checks was not sufficient to cause its account to fall below the amount of credit given for the draft. Defendant was a regular customer of the Bank of Simsboro. When it presented drafts of like kind previous to this time, its drafts were accepted and its account credited. It was not forbidden to check against the credit given for the draft, and the fact that the amount of defendant's account on the day the draft was credited to it was more than sufficient to cover the checks given by defendant that day was merely coincidence.

The fact that the Bank of Simsboro reserved to itself the right to charge the draft back to defendant, if it was returned unpaid, makes no material difference. Whether it had specially reserved that right or not, it could have held defendant, the maker, responsible for the amount of the draft, had it been returned unpaid. This was held in the following cases: Blacher v. Nat. Bank of Baltimore, 151 Md. 514, 135 A. 388, 49 A. L. R. 1366; Bryant v. Williams (D. C.) 16 F.(2d) 159; Bank of California v. Young, 123 Or. 95, 260 P. 227; Nat. Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N. W. 503, L. R. A. 1917E, 374; Foristel v. Security Nat. Bank, Sav. & Trust Co., 320 Mo. 436, 7 S.W. (2d) 997; First Nat. Bank v. Wells County, 54 N. D. 502, 209 N. W. 962; Old Nat. Bank v. Gibson, 105 Wash. 578, 179 P. 117, 6 A. L. R. 247; Real Estate-Land Title & Trust Co. v. Butler, 296 Pa. 54, 145 A. 689.

The Supreme Court of the United States in the case of Douglas v. Federal Reserve Bank, 271 U. S. 489, 46 S. Ct. 554, 556, 70 L. Ed. 1051, passed upon the identical question in the following language:

"It is not necessary to decide any of these questions here, for when paper is indorsed without restriction by a depositor, and is at once passed to his credit by the bank to which he delivers it, he becomes the creditor of the bank; the bank becomes owner of the paper, and in making the collection is not the agent for the depositor. Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482; Union Electric Steel Co. v. Imperial bank (C. C. A.) 286 F. 857; Gen. Amer. Tank Car. Corp. v. Goree (C. C. A.) 296 F. 32, 36; In re Ruskay (C. C. A.) 5 F.(2d) 143; Scott, Cases on Trusts, p. 64, note, § 8, pp. 66, 67.

"Such was the relation here between the plaintiff and the Douglas Bank, unless it was altered by the words printed on the passbook to the effect that out of town items were credited 'subject to final payment.' The meaning of this language, as the cashier of the Douglas Bank testified, and as the court below held, was that, if the check was not paid on presentation, it was to be charged back to plaintiff's account. The check was paid, and the drawer and indorsers discharged. Malloy v. Fed. Res. Bank (D. C.) 281 F. 997; Fed. Reserve Bank v. Malloy, 264 U. S. 160, 166, 44 S. Ct. 296, 68 L. Ed. 617, 620, 31 A. L. R. 1261; Nineteenth Ward Bank v. First Nat. Bank, 184 Mass. 49, 67 N. E. 670; Winchester Mill. Co. v. Bank of Winchester, 120 Tenn. 225, 111 S. W. 248, 18 L. R. A. (N. S.) 441.

"Without these words, the relationship between the plaintiff and the bank was that of indorser and·indorsee; and their use here did not vary the legal rights and liabilities incident to that relationship, unless it dispensed with notice of dishonor to the depositor. As was said by the court in Burton v. United States, supra [196 U. S.] 297, 25 S. Ct. 243, 246 [49 L. Ed. 486]:

" 'The testimony * * * as to the custom of the bank, when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser.of the check, and nothing more. There was nothing whatever in the evidence showing any agreement or understanding as to the effect of the transaction between the parties—the defendant and the bank—making it other than such as the law would imply from the facts already stated.'

"While there is not entire uniformity of opinion, the weight of authority supports the view that upon the deposit of paper unre-strictedly indorsed, and credit of the amount to the depositor's account, the bank becomes the owner of the paper, notwithstanding a custom or agreement to charge the paper back to the depositor in the event of dishonor. Burton v. U. S., supra; Brusegaard v. Ueland, 72 Minn. 283, 75 N. W. 228; Nat. Bank v. Bossemeyer, 101 Neb. 96, 102, 162 N. W. 503, L. R. A. 1917E, 374; Walker & Brock v. D. W. Ranlett Co., 89 Vt. 71, 93 A. 1054; Aebi v. Bank of Evansville, 124 Wis. 73, 102 N. W. 329, 68 L. R. A. 964, 109 Am. St. Rep. 925. See Scott v. W. H. McIntyre Co., 93 Kan. 508, 144 P. 1002, L. R. A. 1915D, 139; Vickers v. Machinery Warehouse & Sales Co., 111 Wash. 576, 191 P. 869. But see W. J. Barton Seed, Feed & Implement Co. v. Mercantile Nat. Bank, 128 Tenn. 320, 160 S. W. 848; Armour Packing Co. v. Davis, 118 N. C. 548, 24 S. E. 365.''

Beutel's Fifth Edition of Brannan's Negotiable Instruments Law, pp. 330 and 331, has the following to say:

"Although Section 25 clearly provides that any consideration sufficient to support a simple contract constitutes value, the majority of the courts have tenaciously clung to the old common law rule that mere crediting of an account is not value. Tatum v. Com. Bank & Trust Co., 185 Ala. 249, 64 So. 561; Ashley State Bank v. Hood, 47 Idaho, 780, 279 P. 418 (not citing the N. I. L.); Varney v. Nat. City Bank, 80 Ind. App. 598, 139 N. E. 326; McNight v. Parsons, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 15 Ann. Cas. 665, 125 Am. St. Rep. 265; Merchants' Nat. Bank v. Marden, Orth & Hastings Co., 234 Mass. 161, 125 N. E. 384; Savings Bank v. Schaal, 156 Minn. 424, 195 N. W. 141; Republic Nat. Bank v. Bobo, 227 Mich. 6, 198 N. W. 176; Hightstown Trust Company v. Amer. Equity Corp., 144 A. 599, 7 N. J. Misc. 135; 2 Dak. L. Rev. 458; Citizens' State Bank v. Cowles, 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765; Abraham v. Am. Ex. Nat. Bank, 191 App. Div. 594, 181 N. Y. S. 663; Sobel v. Engels (Sup.) 188 N. Y. S. 436; Mechanics & Metals Nat. Bank v. Termini, 117 Misc. 309, 191 N. Y. S. 334; Albany County Bank v. People's Co-operative Ice Company, 92 App. Div. 47, 86 N. Y. S. 773; Toledo Cooker Company v. First Nat. Bank of Madison (Ohio App.) 153 N. E. 856 (not citing the Negotiable Instruments Law); State v. Emery, 73 Okl. 36, 174 P. 770, 6 A. L. R. 234; Port Washington State Bank v. Polonia Phonograph Co., 180 Wis. 71, 192 N. W. 472; Bridgeton Nat. Bank v. Way, 253 F. 731,

165 C. C. A. 665; Southern Trust Company v. Vaughn, 277 F. 145 (C. C. A., Okl.); Hodge v. Smith, 130 Wis. 326, 110 N. W. 192.

"It is submitted that this is an erroneous result and is in the teeth of the statute. Sections 25 to 28 clearly show the intent of the act to make value for a negotiable instrument synonymous with the commercial idea of a binding contract. The only implication to the contrary to be found in the act is Sec. 54 (see discussion under that section, infra) but this section does not apply to credits because the credit itself is the full amount to be given. The holdings of these cases create an unfortunate commercial result. If the endorser of the instrument is indebted to the endorsee, the cases uniformly hold that credit on the books is sufficient to constitute value. (See cases on pre-existing debt as value cited under the second sentence of this section, infra, p. 345ff). It is hard to understand how the same act of crediting the account can be of value in one case and not in the other.

"A number of recent cases have reached the proper result that mere crediting the account is value. Blacher v. Nat. Bank of Baltimore, 151 Md. 514, 135 A. 383, 49 A. L. R. 1366; 26 Mich. L. Rev. 209; Tapee v. Varley-Wolter Co., 184 Mo. 470, 171 S. W. 19, not citing the Negotiable Instruments Law; Causey v. Eiland, 175 Ark. 929, 1 S.W. (2d) 1008, 56 A. L. R. 529; 32 Law Notes, 152, not citing the N. I. L.; Farmers' & Merchants' Bank v. Nissen, 46 S. D. 121, 190 N. W. 1014. This is also the rule under the B. E. A. (See English cases, infra, p. 334).

"The Blacher Case in a well-reasoned opinion citing the act very properly held that crediting the depositor's account was value even though the bank reserved the right to charge back the account if the instrument was dishonored. Accord, Nat. Bank of Commerce v. Bossemeyer, 101 Neb. 96, 162 N. W. 503, L. R. A. 1917E, 374. See, also, Bank Credit as Value for Deposit of Demand Paper, 17 Va. L. Rev. 720."

However, in this case the amount of the draft was not charged back to the maker. The Bank of Simsboro closed the following day at noon before the draft had time to be presented to Anderson Clayton & Co., in Monroe, on whom it had been drawn.

The courts of this state have held to the view that the mere crediting of the account of the maker does not transfer ownership where the bank reserves the right to charge back to the maker if not paid, as a great many of the other state courts have held, and as cited in Brannan's Negotiable Instruments Law, above quoted. See Hall, Inc., v. Farmers' Trust & Sav. Bank of Lockport et al., 177 La. 659, 148 So. 909; First Nat. Bank of Shreveport v. Cap. City Pet. Products Co., 13 La. App. 498, 124 So. 849, 128 So. 903; Holmes & Barnes v. Shawnee Milling Co., 5 La. App. 392.

This being true, we would ordinarily feel bound to follow the decisions of our own state courts but for the fact that the very purpose of adopting the Negotiable Instruments Law by the different states of the Union, as was done in Louisiana by Act No. 64 of 1904, in the District of Columbia and in all other states of the Union, was to have a uniform law in all states affecting negotiable commercial paper. Even though the acts adopted in all the states and the District of Columbia are identical, or almost so, the interpretation by the different state courts has not been the same, no doubt due, to a great extent, to a great many cases having been decided without reference to the Negotiable Instruments Law.

There is apparently no conflict in the decisions of the federal courts since the Supreme Court spoke in the Douglas Case, above quoted from. If all of the state courts would follow the Supreme Court of the United States in its interpretation of the Negotiable Instruments Law, in so far as it has spoken, there would be no confusion and the Negotiable Instruments Law would serve the purpose for which it was intended when it was enacted in all the states of the Union and the District of Columbia.

We therefore find that, when defendant deposited the draft in question with the Bank of Simsboro and received credit for same, with no restrictions against checking against said draft, the Bank of Simsboro became the owner of the draft for value, notwithstanding it reserved the right to charge the amount back to defendant if the draft was returned unpaid. Negotiable Instruments Law, Act No. 64 of 1904, §§ 25 and 26.

It necessarily follows that the Bank of Simsboro, having acquired the draft for value, could and did legally transfer it to the plaintiff herein, and defendant is liable to plaintiff thereon.

The judgment of the lower court is correct, and is affirmed, with costs.