## New Waterford Bank v. Freeman Buick-Pontiac Co.

*Thomas V. Mansell* and *Richard N. McKee*, for plaintiff.

*Alvah M. Shumaker*, for defendant.

*Opinion*

HENDERSON, J., July 5, 1963.—This matter is before the court on defendant's motion for judgment on the pleadings. The pleadings in this case consist of a complaint, an amended complaint containing new matter, and plaintiff's answer to new matter. Defendant also filed interrogatories which, together with the answers, have been made part of the pleadings.

The complaint is in assumpsit and alleges generally that a depositor negotiated a loan from plaintiff in the sum of $6,700 to be repaid on the following day, and as security gave a note in that amount secured by a chattel mortgage on three unencumbered automobiles; that on the next day, defendant purchased an automobile from depositor, giving its check in the amount of $2,847.79 to depositor; that depositor endorsed the check "for deposit only—Valley Motor Sales and Service, Inc." and on that day made a total deposit with plaintiff, including defendant's check, in the amount of $9,942.07.

On the next day following the deposit, plaintiff cancelled depositor's note as paid in full and returned the

same to depositor, together with the automobile titles and deposit slip; satisfaction of the depositor's loan was entered upon plaintiff's books on the following morning; six days thereafter plaintiff received notification that defendant had stopped payment on its check; defendant's check was regular on its face and plaintiff had no notice, actual or constructive, of any defect or infirmity in the said check; at the time plaintiff received notice that payment had been stopped on defendant's check, depositor had no balance on deposit with it; during the said six-day period, depositor had drawn checks against its deposit which had included defendant's check and that by its reliance on defendant's check, plaintiff had suffered an actual loss in the amount of $2,847.79.

Defendant's answer admits that defendant purported to purchase an automobile from depositor for the sum $2,847.79 and gave it's check to depositor in that amount but alleges that the depositor in making this sale perpetrated a fraud upon defendant by reason of the fact that depositor did not have title to the said automobile; defendant admits that it stopped payment on the check by reason of the fact of want of consideration; that it's check was regular on its face but alleges that plaintiff had full notice, actual and constructive, that there was failure of consideration; and it denys that plaintiff relied upon the deposit to its loss.

Under new matter, defendant alleges that as between depositor and itself, there was failure of consideration for the check; that on the day following the deposit of $9,942.07, plaintiff notified defendant that depositor was insolvent and that a discount corporation might have title to depositor's automobiles; that defendant was advised later that day by the discount corporation that it, rather than depositor, did have title to the automobile; that defendant then stopped

payment of its check; that on the date of the telephone call, plaintiff had actual and constructive notice of other frauds of depositor; that plaintiff received the deposit for collection only and that it knew or should have known that there was likely a failure of consideration for plaintiff was not a holder in due course.

In answer to these allegations contained in defendant's new matter, plaintiff denies the allegations and alleges generally that any information which it had concerning depositor's business practices was information received by it after the deposit had been made and after plaintiff had changed its position in such a fashion as to become holder in due course and that its practices and procedures in regard to this entire transaction follow normal business practice.

The only issue involved for the court's determination at this point is whether or not a jury at the trial of the case could find that plaintiff was a holder in due course of the instrument given by defendant and deposited with plaintiff by depositor. If the jury could find that plaintiff is a holder in due course of defendant's check, then the motion for judgment on the pleadings must be refused.

Defendant takes the position that the law of Ohio governs and applies to all matters which took place at the plaintiff bank. Since the State of Ohio has not adopted the Uniform Commercial Code of April 6, 1953, P. L. 3, its cases are found to be ruled by the principles of the Negotiable Instruments Law. We further find that the Uniform Commercial Code, as enacted and interpreted by the Commonwealth of Pennsylvania in regard to those portions governing this fact situation, is merely declaratory of the prior Pennsylvania law, which was the Negotiable Instruments Law, with one exception concerning the burden of proof, that being section 3-307(3).

"The decisions rendered under the repealed Negotiable Instruments Law, and prior thereto, are in accord with the Code as respects the taking of an instrument in payment for an antecedent claim." 27 P. L. Encyc. 485, §143.

The Uniform Commercial Code in section 3-302 defines a holder in due course as follows:

"(1) A holder in due course is a holder who takes the instrument

"(a) for value; and

"(b) in good faith . . .

"(c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

Section 3-303 of the Uniform Commercial Code defines taking for value as follows:

"A holder takes the instrument for value

"(a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or

"(b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or

"(c) when he gives a negotiable instrument for it or makes an irrevocable committment to a third person."

With regard to defining the security interest of collecting banks in items, section 4-208 of the Uniform Commercial Code says:

"(1) A bank has a security interest in an item and any accompanying documents or the proceeds of either

"(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied; . . ."

From a reading of the sections of the statute of the Uniform Commercial Code, we find that if a jury could

determine that plaintiff had a security interest in this check to the extent to which credit was given for it by plaintiff, then under section 3-303, the jury could find that plaintiff took the instrument for value. If they so found, they could then find that plaintiff is a holder in due course, provided they could further find that plaintiff took this check in good faith and without notice that it was dishonored or that there was any defense against it.

The allegation with regard to the bank having a security interest under section 4-208 is that when defendant's check was deposited to depositor's account, plaintiff in accordance with its loan agreement marked the note previously given to it as paid in full and returned to depositor the automobile titles which it was holding as security for the loan and debited depositor's account in the amount of the loan.

If the jury found plaintiff's allegations in this regard to be true, they could then find that plaintiff changed its position in reliance upon defendant's instrument and that plaintiff had acquired a security interest in the instrument.

Defendant takes the position that plaintiff was only a holder for collection since the check, when deposited, was endorsed for deposit only and since the deposit form of plaintiff bank stated that:

"Items received for deposit or collection are accepted on the following terms and conditions. This bank acts only as depositor's collection agent. . . . All items are credited subject to final payment and to receipt of proceeds of final payment."

This question was dealt with in Real Estate-Land Title & Trust Company v. Butler, 296 Pa. 54 (1929), in which the court held that the language used in the passbook and deposit forms "could not be construed as more than a contract between plaintiff bank and its depositor. . . .; the rule was in no sense made for the

benefit of one in the position of the present defendants, and they cannot profit by it." We hold the same to be true in the present case.

In the same case the court quoted from National Bank of Phoenixville v. Bonsor, 38 Pa. Superior Ct. 275, 279, 280 (1909), which was a case where a check deposited in the bank had payment stopped on it which caused depositor's account to be overdrawn and the bank, claiming to be a holder for value, brought suit against the maker of the check. The court there held that when the bank paid the checks of its depositor:

". . . it is fair to presume that this extension of credit was based upon the state of its account, which included the very check . . . in question. . . . (hence) plaintiff bank clearly had a lien upon the check for the amount thus advanced."

And they cited Lightfoot v. Bunnel, 76 Pa. Superior Ct. 468 (1921), for that proposition. It appears to this court that, this being the state of law, we cannot rule as a matter of law that plaintiff bank in the case at bar cannot be a holder in due course.

In the case of Erisman v. Delaware County National Bank, 1 Pa. Superior Ct. 144 (1896), the court held that if the depository bank applies the proceeds of a deposited item to depositor's antecedent debt owed to the bank, then the bank has given value to that extent. Applying that to the facts of the case at bar, we cannot say that a jury at the trial of the case could not find plaintiff bank to be a holder in due course.

Defendant would have us rule this matter on such things as good faith and fraud, which are questions of fact that must be passed upon by the jury under the pleadings. As we have said, the jury can find in the trial of the case that plaintiff is a holder in due course, in which case any recovery granted by the jury to plaintiff could be sustained. This being so, the court is not in a position to rule the case at this point on such

things as "an aura of suspicious circumstances", as alleged by defendant.

Therefore, we make the following order:

### Order of Court

Now, July 5, 1963, defendant's motion for judgment on the pleadings is refused.