Falk & Company *v*. South Texas Cotton Oil Company, Appellant.

Argued March 28, 1951. Before DREW, C. J., STERN, JONES, BELL, LADNER and CHIDSEY, JJ.

*John G. Buchanan,* with him *Milton W. Lamproplos* and *Smith, Buchanan & Ingersoll,* for appellant.

*John A. Metz, Jr.,* with him *Charles H. Sachs, Sachs & Caplan* and *Metz & Metz,* for appellee.

OPINION BY MR. JUSTICE BELL, June 27, 1951:

South Texas Cotton Oil Company, one of the defendants, took this appeal (pursuant to the Act of March 5, 1925 P.L. 23 §1, 12 P.S. §672) from the order of the court below discharging its rule to quash a writ of foreign attachment. The ground or basis of the court's decision was that the issue of title (to the proceeds of several drafts) could not be decided preliminarily on a rule to quash. Because the nature of this case is complicated and the facts are so very important we shall state them in great detail.

This is a proceeding of foreign attachment in assumpsit instituted on July 6, 1950, by Falk & Company a Pennsylvania corporation against South Texas Cotton Oil Company, a foreign corporation, in which The Farmers Deposit National Bank of Pittsburgh was summoned as garnishee. The sheriff on July 6, 1950, served the writ on the garnishee *and attached the*

*proceeds of certain drafts* drawn on the plaintiff by the defendant *as the property of the defendant.*

The defendant, appearing de bene esse, filed a petition averring that the court had no jurisdiction in the case and that *the purported service* was invalid and of no effect *because the defendant does not and did not at the time of service of the writ on the garnishee have any estate belonging to it in the hands or possession of the garnishee and is not and was not at the time of the service of the writ on the garnishee the owner of the drafts* or the proceeds of said drafts. Defendant also averred that on and prior to June 30, 1950, *it had negotiated and sold the drafts to the First National Bank in Houston,* of Houston, Texas. Defendant further asserted that any construction of any Act of Assembly which would render defendant subject to the jurisdiction of the court under the foregoing facts would render the Act unconstitutional and deprive defendant of property without due process of law contrary to Section 1 of the Fourteenth Amendment to the Federal Constitution. *Defendant by its petition requested the court to quash the writ and set aside the service.* The court granted a rule upon the plaintiff to show cause why the service should not be set aside and the writ quashed.

Plaintiff filed an answer alleging on belief, that the drafts were delivered to the bank as collecting agent for the defendant; that at the time of the service of the writ on the garnishee the latter had in its possession the sum of $21,091.19, which money was then the property of the defendant; and that at that time the defendant was the owner of the drafts and the proceeds therefrom. This, as we shall see, is the basic question in the case.

Defendant took the deposition of Clarence Meadows, an Assistant Vice President of the Houston bank to support the averments of its petition, and his testi-

mony was clear, positive and convincing and no one has challenged his credibility. Plaintiff offered no testimony to support the writ or the averments in its answer.

The defendant South Texas Cotton Oil Company entered into a written agreement with plaintiff Falk & Company for the sale of flax seed. Defendant on June 27, June 29 and June 30, 1950, drew drafts upon the plaintiff payable in Philadelphia at sight *to the order of the First National Bank* in Houston, Texas, in amounts totaling $42,346.49. Each of these drafts was deposited by defendant in its account in the Houston bank on the day of its execution.

The Houston bank accepted the drafts as deposits of cash items and *gave the defendant final, unconditional and unqualified cash credit for the sum of the drafts* in its account with the bank. *The defendant was entitled immediately to draw* (from its account) *the entire amount of this final, unconditional and unqualified cash credit.* The practice of accepting drafts drawn by the defendant and giving final, unconditional and unqualified credit therefor to the defendant had been in effect for more than 25 years and was in effect on June 27 to June 30, 1950, inclusive. The Houston bank sent the drafts to the Philadelphia National Bank at Philadelphia, as items to be collected *for the account of the Houston bank* and not for the account of the defendant. When the drafts were presented in Philadelphia for payment, two of them were marked "paid", but the mark was cancelled, and the Philadelphia bank sent all of them to The Farmers Deposit National Bank in Pittsburgh. *The plaintiff paid the drafts at that bank and immediately after payment attached the money as the property of the defendant.*

Plaintiff Falk & Company claims that the defendant South Texas Cotton Oil Company breached its aforesaid contract to deliver the flax seed. For whatever

significance it may have, plaintiff proved that the defendant had in its account with the Houston bank at all times a total deposit far in excess of the amounts involved in this case. Plaintiff relies heavily upon defendant's signature card covering its account with the Houston bank which contained *printed* provisions on the back thereof, two of which are as follows: "Any party . . . by delivery to this Bank of items for cash, credit or collection, *in the absence of written notice to the contrary* at the time, agrees: This Bank acts only as agent for Customer and assumes no liability except for its own negligence. All items, if credited, are credited conditionally, subject to final payment, and checks drawn against such conditional credits may be refused. . . . Items lost in mail or chargeable back to Customer for any other cause may be charged back whether or not the item itself can be returned."

There was no evidence of written notice to the contrary but there was an established 25 year practice to the contrary between the Houston bank and this Oil Company.

Mr. Meadows testified clearly, positively and over and over again that *his (Houston) bank purchased these drafts;* that the drafts were accepted by the bank as deposits of cash items, not as deposits for collection; that *he sent the drafts to Pennsylvania for the account of his bank and not for the South Texas Cotton Oil Company;* that they were final credits to the account of the South Texas Cotton Oil Company which the bank did not intend to and never had changed or offset in any manner *and they still stand today as credits to the account of the Oil Company;* that there was a difference between the practice or course of handling checks or other items of collection deposited by the Oil Company with this bank and the practice or course of handling drafts drawn by the Oil Company both as to the entries in the account and the effect;

that for years it had been the practice of this bank to make an unconditional and unqualified cash credit against which the Oil Company can draw immediately upon receipt of the deposit, for the entire amount of every draft drawn and deposited by the Oil Company in his bank. His bank follows this practice and course of dealing with several of its other customers in addition to the South Texas Cotton Oil Company. The other defendant, namely The Farmers Deposit National Bank of Pittsburgh, garnishee, never notified or advised the Houston bank of the service of the writ of foreign attachment in this case. No representative of the Oil Company ever requested the Houston bank not to charge back to it the amount of the drafts which are being still held by the Farmers Deposit National Bank in Pittsburgh. *The amounts of the drafts have not been charged back by the Houston bank to the Oil Company* because they have not been returned dishonored or unpaid, and *it was Meadows' understanding as well as the contention of the plaintiff, Falk & Company, that they had been paid by the drawee, Falk & Company.* If the drafts had been dishonored, the Houston bank would have charged back to the account of the Oil Company the amount thereof even though it had purchased the drafts because the Oil Company was the drawer thereof and obviously would have been secondarily liable if they had not been paid.

Meadows repeated several times that there was a distinction between the credit given the Oil Company on the deposit of drafts and the handling of collection items, which latter are credited to the account of the Oil Company only if and when collected.

The parties in this case agree that at least two questions are involved: (1) Will foreign attachment lie; and (2) Can the Court set aside a sheriff's service and quash a writ of foreign attachment upon the facts of this case and at this stage of the proceedings?

Plaintiff brought a writ of foreign attachment under the Act of June 13, 1836, P.L. 568, §44 as amended, 12 P.S. Supplement 2891, the pertinent part of which reads as follows: "A writ of foreign attachment, in the form aforesaid, may be issued in all actions ex contractu, . . . *against the real or personal estate of*: (a) any person not residing within this Commonwealth, . . . or (b) *any corporation incorporated under the laws of any other State. . . .*"

Two fundamental facts must coexist: (1) The defendant must be a non-resident or a foreign corporation; and (2) The defendant must have real or personal property within this Commonwealth when the writ of foreign attachment was served on the garnishee.

It is well settled that: "A writ of foreign attachment is an original writ. It is used to commence an action, not against a person but against a res. 'The foundation for the writ is the non-residence of the defendant and the existence of property belonging to him within the jurisdiction': Kennedy v. Schleindl, 290 Pa. 38, 40, 137 A. 815. If there is no res to be attached at the time of service of the writ, the proceeding is a nullity. '. . . but if when the writ is served the garnishee has nothing belonging or owing to the defendant, the attachment is fruitless and a nullity': Sniderman v. Nerone, supra, 386, 7 A. (2d) at 499." *Atkins v. Canadian SKF Co.*, 353 Pa. 312, 314, 315, 45 A. 2d 28; *Mindlin v. Saxony Spinning Co.*, 261 Pa. 354, 104 A. 598; *Kennedy v. Schleindl*, 290 Pa. 38, 137 A. 815; *Raymond v. Leishman*, 243 Pa. 64, 69, 89 A. 791; *O'Brien v. Radford*, 113 Pa. Superior Ct. 88, 171 A. 296; *Edmunds v. Barascope Corp.*, 104 Pa. Superior Ct. 173, 158 A. 303; *Falk Co. v. American Railway Express Co.*, 79 Pa. Superior Ct. 99.

*The touchstone of this case is that the garnishee had no property of this defendant on the date of service of the writ*—the drafts were purchased by the Houston

bank; the Houston bank gave the defendant final unconditional and unqualified cash credit therefor; then and thereafter they were the property of the Houston bank; and they were forwarded to Pennsylvania for collection for the account of the Houston bank and not for the Oil Company. Under these facts neither these drafts nor the proceeds thereof at the time they were paid by the plaintiff (at the Pittsburgh bank and simultaneously attached by the plaintiff) were the property of the defendant, South Texas Cotton Oil Company, and *consequently they could not be attached as the property of the defendant.*

The second or next question that arises is whether, under these facts, the writ of foreign attachment can be quashed at this stage of the proceedings? The usual practice of raising and determining the question of whether the garnishee had in its possession or control any property of the defendant at the time of the attachment is in scire facias proceedings against the garnishee on answers to interrogatories or trial by jury: *Rex v. Paramount Rubber Co.,* 110 Pa. Superior Ct. 536, 543, 168 A. 366. It does not follow, however, that this is the exclusive method or remedy. Section 1 of the Act of March 5, 1925, P.L. 23, 12 P. S. §672, supra, reads as follows: "That wherever in any proceeding at law or in equity *the question of jurisdiction over the defendant or of the cause of action* for which suit is brought is raised in the court of first instance, *it shall be preliminarily determined by the court upon the pleadings or with depositions,* as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments."

The applicable principles pertaining to the quashing of a writ of foreign attachment are clearly set forth in the comprehensive opinion of Mr. Chief Justice MOSCHZISKER in *Pasquinelli v. Southern Macaroni*

*Mfg. Co.,* 272 Pa. 468, 116 A. 372. In that case a motion was made to quash a writ of foreign attachment on the ground of res adjudicata. The Chief Justice in his opinion said (p. 473, 477-478) : "At one time it was held that the power to quash writs was confined to cases where the record disclosed the proceedings to be clearly irregular and void (Crawford v. Stewart, 38 Pa. 34, 36; Steel v. Goodwin, 113 Pa. 288, 292) ; subsequently, in certain exceptional instances . . . *evidence dehors the record was received to prove grounds for quashing writs.* The general rule still is, however, that writs will not be quashed unless some fundamental irregularity appears in the record itself, and cases where this principle has been departed from will be found to present unusual features, which distinguish them from the rule as stated. . . . An applicant to quash a writ may not aver simply a defense on the merits, or a good legal answer to the alleged debt itself, he must point to some defect in the record which renders the proceeding fundamentally irregular and void (Crawford v. Stewart, 38 Pa. 34, 36; Steel v. Goodwin, 113 Pa. 288, 292), or if (as in exceptional instances is allowed) evidence dehors the record is produced to establish defects therein, *the defects depended on must be of a character to put plaintiff completely out of court,* such as that the writ was issued in practical contempt of a previously issued decree of a chancery court forbidding such proceedings (Downing v. Philips, 4 Yeates 274), or that it issued in a case where an injunction, if asked for, would undoubtedly have gone out against the attachment (Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187), *or that one of the statutory props required to sustain the attachment is missing,*—for example, that the person owning the property attached is a resident of the State and was within the county where the writ issued at the time of its issuance; or, again, that the property in ques-

tion is, by statute, exempt from attachment; *or that, for some other such reason, foreign attachment does not lie.* If the most that is averred is a defense on the merits, or simply a good legal answer to the alleged debt itself, such a defense must be developed at trial, . . .".

*Standard Bank of Canada v. Allegheny Lumber Co.,* 77 Pa. Superior Ct. 222, is very similar in its facts to the present case. In that case Morse drew a sight draft payable to the order of the Standard Bank of Canada, the plaintiff, the drawee being the lumber company, the defendant. The bank discounted the draft and deposited the proceeds to the credit of Morse, the drawer, in his open checking account. The bank forwarded the draft to a bank in Pittsburgh for presentation and payment. The drawee paid the draft and simultaneously began a proceeding in foreign attachment against Morse, the drawer, and served the Pittsburgh bank as garnishee. The Superior Court held that a bank which discounts a sight draft and places the proceeds to the credit of a drawer is a holder in due course for value and was the owner of the draft and its proceeds and the proceeds could not be attached as the property of the defendant. Moreover, this decision was rendered in spite of the fact that after the attachment the bank in Canada charged back to the depositor's account in Canada the amount of the draft, although it doubted whether the bank could support such a charge against the will of its depositor after the instrument it had discounted had been paid.*

---

*See to the same effect: *Heid Bros. v. Commercial National Bank,* 240 S.W. 908 (Tex. Comm. of App.); *Provident National Bank v. Cairo Flour Co.,* 226 S.W. 499 (Tex. Civ. App.); *Belle Springs Creamery Co. v. Schultz,* 69 S.W. (2d) 564 (Tex. Civ. App.); *Merchants' Bank v. Searcy Wholesale Grocer Co.,* 265 S.W. 961 (Ark.); *Vickers v. Machinery Warehouse & Sales Co.,* 191 Pac. 869 (Wash.); and *Farmers' State Bank v. Hardie Co.,* 230 S.W. 524

Another analogous case which in principle controls the present case is *Provident Trust Co. v. Rothman,* 321 Pa. 177, 187, 183 A. 793. In that case of foreign attachment *the defendant appeared de bene esse and filed a petition to quash the writ.* A rule to show cause was granted, an answer was filed by plaintiff, depositions were taken in New York City, and, as here, filed as part of the record; and the rule was made absolute *and the writ was quashed, because the property, viz.*: proceeds of life insurance, *was exempt from attachment.* This Court in its opinion said: "It is urged that the matters alleged in the petitions of garnishee and defendant being dehors the record, this case should not have been disposed of in the court below upon a motion to quash the writ. While it is a well-established rule that the court will not quash a writ of attachment execution or foreign attachment unless some fundamental irregularity appears on the face of the record, *yet it is a recognized exception to that rule that evidence dehors the record may be a ground for quashing a writ where defects therein are of such a character as to put plaintiff completely out of court.* In Pasquinelli v. Southern Macaroni Mfg. Co., 272 Pa. 468, the exceptional instances are stated where writs are quashed on matters dehors the record. The present case comes within one of the exceptions therein indicated, viz.: 'that the property in question is, by statute, exempt from attachment.' See also Nicoll v. McCaffrey, 1 Pa. Superior Ct. 187; Dempsey v. Petersburg Sav. & Ins. Co., 26 Pa. Superior Ct. 633."

This exception was reiterated by Mr. Justice STEARNE in *Levie v. Levie,* 361 Pa. 214, 220, 64 A. 2d 792: " 'While it is a well established rule that the court

(Tex. Civ. App.). In the last mentioned case the appellate court said: "When the bank gave [the drawer] unqualified credit for the draft, it became the owner thereof and any funds collected thereon."

will not quash a writ of attachment execution or foreign attachment unless some fundamental irregularity appears on the face of the record, *yet it is recognized exception to that rule that evidence dehors the record may be a ground for quashing a writ where defects therein are of such a character as to put plaintiff completely out. of court':* Provident Trust Company v. Rothman et al., 321 Pa. 177, 187, 183 A. 793. Some of the exceptional instances where writs have been quashed on matters dehors the record are stated in Pasquinelli v. Southern Macaroni Mfg. Co., supra."

Plaintiff contends, notwithstanding all the aforesaid authorities, that he is entitled to the right of trial by jury on the disputed question of fact as to the ownership of the goods involved, especially since the issue depends on oral testimony.* Suffice it to say that the issue does not depend on oral testimony. The drafts on which plaintiff relies are prima facie evidence that the Houston bank was the holder in due course: Section 59, Uniform Negotiable Instruments Law of 1901, P. L. 194, §59, 56 P.S. §139; and therefore the drafts and the proceeds thereof were prima facie the property of the bank and not of the defendant. The burden of overcoming this prima facie case was on the plaintiff: *Dull v. Mitchell,* 283 Pa. 88, 128 A. 734; *First National Bank v. Hartman Co.,* 147 Pa. Superior Ct. 396, 24 A. 2d 582; *Real Estate-Land Title & Trust Company v. Butler,* 296 Pa. 54, 145 A. 689.

Plaintiff failed to produce any evidence to overcome this prima facie case or to sustain its burden of proof or to sustain the averments in its answer that the drafts and the proceeds thereof were the property of the defendant; indeed, all the evidence is clear and undisputed to the contrary.

---

* Cf. *Nanty-Glo Boro v. American Surety Co.,* 309 Pa. 236; 163 A. 523.

We have considered all of the other arguments and contentions which were very ably made by both appellant and appellee, but deem further discussion unnecessary.

Where it *clearly* appears that the proceeding is fundamentally illegal and void or *where the facts clearly "put plaintiff completely out of court, or either of the statutory props required to sustain the foreign attachment is missing"*, it seems unfair and a waste of time to the Court and of time and money to the defendant and to the garnishee and *totally unnecessary to require or permit further proceedings or to deny a writ to quash.* In the present case *the facts clearly demonstrate that the property attached was not the property of the defendant,* and therefore the service of the sheriff on the garnishee should have been set aside and the writ of foreign attachment quashed. The Supreme Court has the power under the Act of May 20, 1891, P.L. 101, §2, 12 P.S. §1164, to enter such judgment, order or decree as may seem to us proper and just. We shall therefore enter the following order: The order of the court below is reversed, the rule to show cause is made absolute, the service of the writ of foreign attachment is set aside and the writ of foreign attachment is hereby quashed.