## Pasquarelli v. Pistone

*James Fitzcharles, 3rd*, for plaintiff.
*Louis F. Floge, Jr.*, for defendant.
*George T. Kelton*, for garnishee.

BIESTER, P. J., June 28, 1963.—This action of assumpsit was instituted by plaintiff by writ of foreign attachment directing the sheriff of Bucks County to attach "all pension and retirement benefits now or hereafter falling due or payable to Joseph Pistone." Defendant, a resident of the State of New Jersey, is an employe of the Rohm & Haas Company of this county, upon which the attachment was served as garnishee. Subsequently, plaintiff filed three separate causes of action in assumpsit against defendant, with claims totalling $1,090, with interest.

The garnishee's report sets forth that defendant is a participant in a pension plan for employes of the garnishee, the plan being insured under a group annuity contract issued by the Continental Assurance Company with offices in Chicago, Ill.; that if any of defendant's pension rights under the plan are subject to attachment, the interest of said defendant is not held by the garnishee, but by the Continental Assurance Company; that in any event, the pension or retirement

benefits are immune and exempt from attachment under the laws of the Commonwealth of Pennsylvania; that the aggregate present cash value of all pension or annuity contracts in force for the benefit of the said defendant is $1,695, but that defendant is not presently entitled under the plan to immediate payment of all, or any part, of this sum.

Both employe-defendant and employer-garnishee have filed preliminary objections and have moved to dissolve the attachment on the ground that the garnishee has no property of defendant in its possession, except such as may be due defendant as wages by reason of his employment, which, of course, are not subject to attachment under the laws of this Commonwealth. It has been agreed by counsel that in disposing of the preliminary objections, we may consider the pension plan itself as a part of the record.

The pension plan is company supported and the employes contribute no money toward its maintenance. It provides for a life pension for employes retiring at the age of 65, special disability benefits, a basic life insurance plan and an interim life insurance plan for employes with less than five years service. Payment may be made to a beneficiary if an employe dies before retirement, or within 10 years after such retirement. An employe may not borrow against or withdraw any part of the cash value of the policy. The amount of the pension is based on the employe's rate of pay and number of years of service. The company reserves the right to reduce, suspend or discontinue payments to the insurance company, but in the event the plan is cancelled, or payment is discontinued, the employe shall continue to hold title to the benefits which have already been created for him. It is to be noted parenthetically that this reservation in the plan is permissive, since the insurer and the employer are the primary contracting parties. Whether or not the

policy shall continue in force depends upon their will. It is not within the power of the beneficiary to keep the group contract of insurance in force or to abrogate it. The insured employe certainly has no vested right which will prevent cancellation by mutual agreement between the insurer and the employer. See Miller v. The Travelers Ins. Co., 143 Pa. Superior Ct. 270; Poch v. Equitable Life Assurance Society of United States, 343 Pa. 119; Aetna Life Ins. Co. v. Messier, 173 F. Supp. 90.

The plan further provides that if the employe's service is terminated for any reason, other than the employe's death or permanent disability, the employe may exercise one of the four following options, provided that the cash value of all annuity contracts in force for the benefit of such employe exceeds $1,000, which is the situation in the present case. These options are as follows:

Option A: To receive paid-up retirement and death benefits available under such annuity contract.

Option B: To elect to replace with new life insurance and without medical examination some or all of the life insurance then in effect and not paid up, upon terms stipulated by the life insurance company.

Option C: Subject to the approval of the committee and in such manner as it may specify, the employe may receive some or all of the cash value of such annuity contract.

Option D: To continue the retirement income insurance as an individual policy.

A writ of foreign attachment is an original writ. It is used to commence an action, not against a person, but against a res. If there is no res to be attached at the time of service of the writ the proceeding is a nullity, that is to say, where the garnishee has nothing

belonging to, or owing to, defendant the attachment becomes fruitless. See Falk & Co. v. South Texas Cotton Oil Co., 368 Pa. 199, 205, and cases there cited. It has been held that accumulations of property are subject to the operation of the attachment, but that clearly implies a subject to which accumulations may be referred; that is a subsisting attachment of property: David E. Kennedy, Inc. v. Schelindl, 290 Pa. 38, 41.

Pa. R. C. P. 1252 states, in part:

"A foreign attachment may be issued to attach property of a defendant not exempt from execution, . . ."

Under the discussion of this rule in Goodrich-Amram (§1252-9 and §1252-10), it is commented that the interest of defendant in property subject to foreign attachment must be such as *can be calculated and made certain* and *must be unconditional.* It may also be pointed out that if the condition is within the control of defendant, a foreign attachment cannot compel him to act in such a manner as to place the fund within the grasp of the creditor's attachment. See Martin v. Balis, 18 D. & C. 187; Austin-Nichols Co. v. Union Trust Co., Garnishee, 289 Pa. 341; Holly Corp. v. Dobell, 19 D. && C. 2d 435, affirmed 401 Pa. 307.

Since there was no res to be attached at the time the garnishee was served, in that it had no funds in its hands to which defendant is entitled, the proceeding in the instant case becomes a nullity. Although not essential to this opinion, it may be observed that plaintiff should be confronted with the same rationale and obstacles in respect to any funds in the hands of the insurance carrier.

The briefs of respective counsel in the case are in large measure devoted to a discussion of the various statutes exempting from execution annuities or proceeds of insurance policies, both group and individual. The specific acts referred to are the Act of May 17,

1919, P. L. 208, as supplemented and amended, 40 PS §514; Act of May 3, 1917, P. L. 112, as supplemented and amended, 40 PS §515; Act of June 28, 1923, P. L. 884, as supplemented and amended, 40 PS §517, and the Act of May 17, 1921, P. L. 682, as supplemented and amended, 40 PS §534. We have refrained in this opinion from a discussion of these various exemption statutes, and their relation to each other, as they appear to have no application to the situation in which there is no fund available to, or due, defendant in the hands of the garnishee.

### Order

And now, to wit, June 28, 1963, the preliminary objections to plaintiff's foreign attachment are hereby sustained and the said foreign attachment dissolved and dismissed.