**LANTZ INTERNATIONAL CORPORATION**

v.

**INDUSTRIA TERMOTECNICA CAMPANA, S.p.A., Defendant,**

and

**Girard Trust Bank, Garnishee.**

**Civ. A. No. 73-220.**

United States District Court,
E. D. Pennsylvania.

May 3, 1973.

Harold Greenberg, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiff.

Seymour I. Toll, Philadelphia, Pa., C. Murray Adams, Richard A. Anderman, Joseph Zammit, Reavis & McGrath, New York City, of counsel, for defendant ITC.

Lawrence J. Fox, Jack B. Justice, Drinker, Biddle & Reath, Philadelphia, Pa., for garnishee Girard.

Gilbert Newman, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., Frank O. Fredericks, Frank & Fredericks, New York City, of counsel, for intervenor Banco di Roma.

## MEMORANDUM AND ORDER

JOSEPH S. LORD, III, Chief Judge.

This action for breach of warranty was commenced by the issuance of a writ of foreign attachment.[1]  Defend-

---

1. This case originated in the Court of Common Pleas of Philadelphia County by a writ of foreign attachment, which was issued on January 19, 1973. A summons was issued and served on Girard Trust Bank ("Girard"), as garnishee, on Janu-

ant, Industria Termotecnica Campana, S. p. A. ("ITC") has moved to dismiss for lack of jurisdiction. Intervenor, Banco di Roma, has moved to vacate and dissolve the attachment.[2] Both ITC and Banco di Roma have moved for protective orders staying all discovery, including but not limited to plaintiff's interrogatories.[3]

## I. FACTS

### A. Industria Termotecnica Campana, S. p. A.

Defendant ITC is a foreign corporation, organized under the laws of Italy, with its principal place of business in Naples. Defendant has no office, agents, or employees in the United States, and is not registered to do business in the Commonwealth of Pennsylvania. The sole basis of jurisdiction over the defendant is the attachment of certain drafts which the plaintiff alleges are the property of the defendant. These drafts were drawn on Girard under two irrevocable letters of credit, and were presented to Girard for payment by two Italian banks, Banco di Roma and Monte dei Paschi di Siena.[4]

The irrevocable letters of credit were issued by Girard at the request of Lantz for the benefit of ITC, in order to facilitate Lantz's purchase of refrigerators which ITC manufactured in Italy. Under these letters of credit, Girard engaged itself to honor drafts at 180 days sight in connection with payment for the refrigerators. Accordingly, ITC drew a series of such drafts in July and August of 1972. These drafts became payable on various dates from January 22, 1973 through February 14, 1973.

### B. Banco di Roma

After the drafts were drawn by ITC under Girard Letter of Credit No. 35502, they were endorsed in blank and delivered to the Naples office of Banco di Roma for collection. Banco di Roma forwarded each draft to Girard and requested that Girard accept the drafts and upon the applicable dates, credit the account of the head office of Banco di Roma with the proceeds.

Upon its receipt of each draft, Girard notified Banco di Roma that the drafts had been accepted and that the proceeds would be paid to it upon maturity, as instructed. Seven of these drafts drawn under Letter of Credit No. 35502 became due and payable on January 22 and January 23, 1973, and the total face amount of these seven drafts is $262,906.26. It is these drafts that are now in dispute.[5]

According to the affidavits of Roberto Fincadi, General Manager of ITC, and of Vito Maffei, Assistant Representative

ary 22, 1973. Defendant removed the action to this court on January 30, 1973, pursuant to 28 U.S.C. § 1441.

2. On March 14, 1973, Banco di Roma was granted leave to intervene in this cause and was made a party to the cause. On March 15, 1973, plaintiff, Lantz International Corporation ("Lantz"), posted a bond in the amount of $14,000 with the court, pursuant to our order, to indemnify Banco di Roma against loss of interest and to indemnify both Banco di Roma and ITC against out-of-pocket expenses in the event the latter prevail.

3. Plaintiff's Interrogatories and First Supplemental Interrogatories to Defendant total 120 questions. Plaintiff's Interrogatories to Intervenor, Banco di Roma, total 62 questions. Before defendant and intervenor filed these motions for protective orders, plaintiff took the deposition of

Donald S. Hough, Vice President in the International Division of Girard, on March 2, 1973.

4. Two irrevocable letters of credit are involved, Girard Trust Bank Letter of Credit No. 35502, dated June 30, 1972, for any sum or sums not exceeding $328,687.42; and Girard Trust Bank Letter of Credit No. 35638, dated August 3, 1972, for any sum or sums not exceeding $63,347.51. ITC is the beneficiary of both letters of credit. The former letter of credit was advised through Banco di Roma, and the latter of credit was advised through Monte dei Paschi di Siena.

5. The balance of the drafts under Letter of Credit No. 35502 which became due and payable January 30, 1973, and thereafter have now been paid to Banco di Roma by Girard and, therefore, are not material to this proceeding.

in the United States for Banco di Roma, on November 24, 1972, ITC requested by letter that Banco di Roma discount these drafts. Pursuant to this request, Banco di Roma discounted the drafts and credited them toward the repayment by ITC of a previous one million dollar advance which Banco di Roma had made to ITC, in May, 1972. On December 13 and December 14, 1972, Banco di Roma issued official confirmation to ITC that the drafts had been credited in reduction of the loan, and at the same time, Banco di Roma released to ITC 580,760,000 lira which it had been holding as security since the loan was made in May.

### C. Monte dei Paschi di Siena

Similarly, in August, 1972, four drafts were drawn by ITC under Letter of Credit No. 35638, in the aggregate amount of $63,377.51, due and payable on February 13, 1973. These checks were endorsed in blank and delivered to the Naples office of Monte dei Paschi di Siena for collection. Monte dei Paschi di Siena forwarded the drafts to Girard with the request that upon the due date, Girard credit the account of the Milan office of Monte dei Paschi di Siena with the proceeds. After receiving these drafts, Girard notified Monte dei Paschi di Siena that the drafts had been accepted.

According to the affidavits of Roberto Fincadi, General Manager of ITC, and of Lido Pasqui, identified as the legitimate representative of the Naples branch of Monte dei Paschi di Siena, on January 16, 1973, ITC requested that these drafts be discounted by Monte dei Paschi di Siena, and that the proceeds be used to repay partially advances amounting to two million dollars made to ITC by Monte dei Paschi di Siena in June, 1972. On the same date, Monte dei Paschi di Siena discounted the drafts and credited ITC with the proceeds, $62,836.00.

### D. Girard Trust Bank

The writ of foreign attachment was served on the garnishee, Girard, on January 22, 1973. Pursuant to Pa.R.Civ.P. 1266, 12 P.S. Appendix, the garnishee filed its report with the court on February 2, 1973. The garnishee reported that at the time the writ was served, it did not have in its possession any property belonging to defendant and that it did not owe any debt to defendant. However, the garnishee reported that it held two drafts drawn by defendant on the garnishee for the aggregate sum of $210,093.96 and that these drafts had been accepted for payment on January 22, 1973. The garnishee further reported that these two drafts were negotiated by defendant to Banco di Roma, and therefore the garnishee did not regard them as the property of defendant.

Also, at the time the writ was served, the garnishee reported that it had accepted for payment on various dates from January 23, 1973 to February 20, 1973 twenty additional drafts drawn by the defendant on the garnishee for the aggregate sum of $207,743.48. Sixteen of these drafts, for the aggregate sum of $144,395.97, had been negotiated by the defendant to Banco di Roma. The other four of these drafts, for the aggregate sum of $63,347.51, had been negotiated by defendant to Monte dei Paschi di Siena. Therefore, the garnishee reported that these drafts did not evidence a debt owed by the garnishee to defendant.

## II. MOTION TO DISMISS

Defendant has moved to dismiss for lack of jurisdiction. The basis of the motion is that plaintiff has not attached any property belonging to defendant. The intervenor, Banco di Roma, which claims to be the owner of seven of the drafts now held by the garnishee, joins with the defendant in arguing that the plaintiff has not attached any property belonging to defendant. We agree with defendant and the intervenor, and the motion to dismiss will be granted.

F.R.Civ.P. 4(e) permits service of process upon any party not an inhabi-

tant of or found within a state whenever a statute or rule of court of the state in which the district court is held provides for service upon or notice to him by reason of the attachment or garnishment or similar seizure of his property located within the state. Service may be made under the circumstances and in the manner prescribed in the statute or rule. Further, under 28 U.S.C. § 1450, when an action is removed from a state court, any attachment of goods in the state court shall be treated in the federal court in the same manner as it would be treated in the state court.

Pa.R.Civ.P. 1252 provides for commencing an action by a writ of foreign attachment:

> "A foreign attachment may be issued to attach [the] property of a defendant not exempt from execution upon any cause of action at law or in equity * * * in which the relief sought includes a judgment or decree for the payment of money when
>
> \* \* \* \* \* \*
>
> "(3) the defendant is a foreign corporation or similar entity which is not registered in the Commonwealth."

Under Pa.R.Civ.P. 1252, the basis for the writ of foreign attachment is the presence of property of the defendant within the jurisdiction of the court. Nederlandsche Handel-Maatschappij v. Sentry Corp., 163 F.Supp. 800, 803 (E.D.Pa.1958). An attachment is a nullity and confers no jurisdiction if the garnishee has no property of the defendant at the time the writ is served. Dunn v. Printing Corp. of America, 245 F.Supp. 875, 880 (E.D.Pa.1965).

Thus, the crucial question here is whether the drafts held by the garnishee on the date when the writ was served belonged to ITC or to the two Italian banks. If the drafts held by the garnishee when the writ was served were the property of defendant, the court would have jurisdiction, and the motion to dismiss would be denied. However, if the drafts were the property of the two Italian banks, then there is no basis for this court's jurisdiction over defendant.

In Falk & Co. v. South Texas Cotton Oil Co., 368 Pa. 199, 82 A.2d 27 (1951), the Supreme Court of Pennsylvania was confronted with this very issue. In Falk, the sheriff had served a writ of foreign attachment on the garnishee and attached as the property of the defendant the proceeds of certain drafts drawn on the plaintiff by the defendant. The defendant argued that the drafts had been negotiated to the First National Bank in Houston, and that at the time the writ was served, the drafts were the property of that bank and not of the defendant. The court agreed with the defendant and held that the attachment was void because the proceeds of the drafts belonged to the bank, holding:

> "*The touchstone of this case is that the garnishee had no property of this defendant on the date of service of the writ*—the drafts were purchased by the Houston Bank; the Houston Bank gave the defendant final unconditional and unqualified cash credit therefor; then and thereafter they were the property of the Houston Bank, and they were forwarded to Pennsylvania for collection for the account of the Houston Bank and not for the Oil Company. Under these facts neither these drafts nor the proceeds thereof at the time they were paid by the plaintiff (at the Pittsburgh bank and simultaneously attached by the plaintiff) were the property of the defendant, South Texas Cotton Oil Company, and *consequently they could not be attached as the property of the defendant.*"

368 Pa. 205–206, 82 A.2d 31 (emphasis in original).

Accord, Badler v. Gillarde Sons Co., 387 Pa. 266, 127 A.2d 680 (1956).

In Falk, as well as in Badler, the court held that under the Uniform Negotiable Instruments Law, 56 P.S. § 139 (repealed), the drafts and the proceeds thereof were *prima facie* the property of the Houston bank and not of the defend-

ant, and that the burden of overcoming this presumption was on the plaintiff. 368 Pa. at 210, 82 A.2d 27. Section 3–307(2) of the Uniform Commercial Code, 12A, P.S. § 3–307(2), incorporates this presumption from the Uniform Negotiable Instruments Law that a holder is entitled to recover on an instrument.[6]

We conclude that ITC is entitled to the presumption accorded a holder under § 3–307(2). A holder is "a person who is in possession of a document of title or an instrument or an investment security drawn, issued or indorsed to him or to his order or to bearer or in blank." 12A P.S. § 1–201(20). Here, all of the drafts were drawn by ITC payable "to Our Order," and all were endorsed in blank before being negotiated to Banco di Roma and Monte dei Paschi di Siena.[7] Moreover, although we need not reach the issue of whether Banco di Roma and Monte dei Paschi di Siena qualified as holders in due course under 12A P.S. § 3–302 [see *infra*], in addition to being holders within the meaning of 12A P.S. § 1–201(20), we do note that these two banks did take the instruments and give value for them before the writ of attachment was served on the garnishee.[8] A holder takes an instrument for value when he takes the instrument in payment for an antecedent debt. 12A P.S. § 3–303(b).

Nonetheless, Lantz argues that *prima facie* drafts drawn under the letter of credit belonged to ITC because the letter of credit and the drafts were drawn to the order of ITC. This argument is clearly without merit. Both of the letters of credit bore the statement, "this credit is subject to the uniform customs and practice for documentary credits

(1962 revision), International Chamber of Commerce Brochure No. 222." Article 3 of this brochure provides:

"An irrevocable credit is a definite undertaking on the part of an issuing bank and constitutes the engagement of that bank to the beneficiary or, as the case may be, to the beneficiary and bona fide holders of drafts drawn and/or documents presented thereunder, that the provisions for payment, acceptance or negotiation contained in the credit will be duly fulfilled, provided that all the terms and conditions of the credit are complied with."

Similarly, 12A P.S. § 5–114(1) provides:

"An issuer must honor a draft or demand for payment which complies with the terms of the relevant credit regardless of whether the goods or documents conform to the underlying contract for sale or other contract between the customer and the beneficiary."

Thus, under both the Uniform Customs and Practice for Documentary Credits, as well as under the Uniform Commercial Code, there is a strong presumption that the holder of a draft drawn under an irrevocable letter of credit is the owner of the draft and is entitled to the proceeds thereof, as long as there is compliance with the terms of the letter of credit.

Here, all of the drafts were drawn under two irrevocable letters of credit. The terms of those letters were that drafts be drawn at 180 days sight on Girard Trust Bank, that these drafts bear the clause "drawn under Girard Trust Bank Letter of Credit No. 35502"

---

6. 12A P.S. § 3–307(2) provides, "When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense."

7. 12A P.S. § 3–202(1) provides, "Negotiation is the transfer of an instrument in such form that the transferee becomes a holder. If the instrument is payable to order it is negotiated by delivery with

any necessary indorsement; if payable to bearer it is negotiated by delivery."

8. 12A P.S. § 3–302(1) provides, "A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

(or No. 35638), and that the drafts be accompanied by certain documents.[9] Lantz has not alleged that the drafts failed to comply with any of these terms of the letters of credit.

■ Plaintiff argues at some length that the banks are not holders in due course, but in our view, we need not reach this issue. It does not matter, for our present purposes, whether Banco di Roma and Monte dei Paschi di Siena are holders in due course or mere holders, for plaintiff has asserted no claim against Banco di Roma or Monte dei Paschi di Siena, and they, in turn, have not asserted any of the rights available only to a holder in due course under 12A P.S. § 3–305. We have found that the banks did qualify as holders of the instruments. The holder of an instrument is *prima facie* the owner of it and entitled to receive its proceeds. Plaintiff has introduced no evidence to rebut this presumption.

### III. MOTION FOR PROTECTIVE ORDER

■ According to the affidavit of Carl Lantz, President of Lantz International Corporation, plaintiff believes that the relationship between Banco di Roma and Monte dei Paschi di Siena and ITC is something other than the normal banker-customer relationship. Plaintiff alleges that the relationship between these banks and ITC "may very well rise to the level of an agreement by which Banco di Roma and Monte dei Paschi di Siena did not become the absolute owners of the drafts." Thus, plaintiff seeks further discovery in order to look behind the transactions between the Italian banks and ITC.

■■ We find plaintiff's request for further discovery unjustifiable. The party asserting federal jurisdiction has the burden of proving all of the jurisdictional prerequisites. Kaufman v. Liberty Mut. Ins. Co., 245 F.2d 918, 920 (C.A.

3, 1957). Plaintiff must make at least a *prima facie* showing of jurisdiction before we can allow discovery to proceed. Here, plaintiff has already taken the deposition of Donald S. Hough, Vice President of the garnishee, which clearly demonstrates that plaintiff's position is baseless.

Now, plaintiff seeks to have defendant and intervenor answer 182 interrogatories. All of these interrogatories are directed towards discovery of the relationship between ITC and the two Italian banks. We can conceive of no set of facts which could emerge from these interrogatories that would alter our conclusion on defendant's motion to dismiss. Rather, these interrogatories all go to the issue of whether Banco di Roma and Monte dei Paschi di Siena qualify as holders in due course. As we have already stated, this issue is not relevant because plaintiff has alleged no claims against Banco di Roma and Monte dei Paschi di Siena, and they, in turn, have not asserted any of the rights available *only to a holder in due course.*

The only relevant matter which could conceivably emerge from these interrogatories would be in regard to a collusive agreement whereby the banks did not actually become the owners of the drafts which they discounted, thereby rebutting the presumption of ownership normally accorded to the holder of a negotiable instrument. However, plaintiff has offered nothing to substantiate this contention, and in light of the uncontroverted facts, it would be much too speculative to permit further discovery solely on this basis.

### ORDER

And now, this 3rd day of May, 1973, it is hereby ordered:

1. That defendant's motion for a protective order is granted.

2. That intervenor's motion for a protective order is granted.

---

9. The documents required by the letters of credit to accompany the drafts were commercial invoices in triplicate, special customs invoice form 5515, and a full set of clean on-board bills of lading, issued to the order of Girard Trust Bank.

3. That defendant's motion to dismiss is granted with prejudice, and the attachment of property in the custody of the garnishee is hereby dissolved and vacated.

4. That intervenor's motion to dissolve and vacate the attachment is denied as moot.

5. That plaintiff shall reimburse defendant and intervenor for their actual costs, exclusive of counsel fees, in defending this action, and shall reimburse intervenor for all interest lost on funds held by the garnishee as a result of the attachment in this action.